HÉCTOR LÓPEZ VICIL, demandante y peticionario, *v.* ITT INTERMEDIA, INC., demandada y recurrida.

*Número:* CC-96-329 *Resuelto:* 26 de junio de 1997

576

*José Luis Novas Dueño*, de *Novas, Maza & Lamoso*, abogado del peticionario; *Radamés A. Torruella* y *Maggie Correa Avilés*, de *McConnell Valdés*, abogados de la recurrida.

PER CURIAM:

(En reconsideración)

En reconsideración, nos corresponde establecer los criterios que utilizarán los tribunales de instancia al imponer honorarios de abogado a favor del empleado victorioso en reclamos al amparo de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 *et seq.*). En el caso de autos —en

la opinión que emitiéramos el 4 de abril de 1997— resolvimos, entre otros planteamientos, que los honorarios de abogado que dispone de forma mandatoria el Art. 4 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 149, *son compensatorios y constituyen la única y exclusiva suma que podrá cobrar el abogado de un trabajador que inste reclamación bajo dicha ley, correspondiéndole el pago al patrono perdidoso.* *López Vicil v. ITT Intermedia, Inc.*, 142 D.P.R. 857 (1997). Añadimos que el carácter exclusivo de esta compensación surgía de los Arts. 1 y 2 de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 L.P.R.A. secs. 3114–3115. Por no existir unos criterios claros para que los tribunales de instancia utilicen al determinar los honorarios razonables, los esbozaremos a continuación.

I

En Puerto Rico y según la Ley Núm. 100, *supra*, en una sentencia dictada contra cualquier patrono, mandatoriamente el tribunal de instancia impondrá a éste el pago de las costas y una suma razonable que nunca será menor de cien dólares ($100) para honorarios de abogado. Ni la Ley Núm. 100, *supra*, ni la Ley Núm. 402, *supra*, definen qué se entenderá por honorarios razonables ni establecen los criterios que se habrán de utilizar en su determinación. Resulta necesario establecer unos elementos objetivos para que los tribunales de instancia los tomen en consideración al calcular una suma razonable de honorarios para el abogado del demandante. Estos criterios son de crucial importancia pues afectarán directamente la posibilidad de que los abogados decidan o no litigar casos de discrimen en el empleo. Si bien la política pública tras las citadas Leyes Núms. 100 y 402 es fomentar que trabajadores agraviados vindiquen sus derechos, no podemos perder de perspectiva que se trata de casos complejos y costosos, por lo que corresponde compensar justamente a los abogados de los trabajadores.

Por su parte, en la esfera federal, originalmente imperaba el *American Rule* que establecía que cada parte en un litigio judicial, pagaría los honorarios de sus abogados, a menos que expresamente alguna ley indicara lo contrario. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240 (1975). En respuesta a esta norma, el Congreso federal aprobó el *Civil Rights Attorney's Fee Award Act* de 1976 (42 U.S.C. sec. 1988(b)) (en adelante la sec. 1988), para autorizar a los tribunales de distrito a imponer, discrecionalmente, honorarios compensatorios a favor de la parte victoriosa.

El objetivo de la sec. 1988 es garantizar el acceso a los tribunales a personas cuyos derechos civiles han sido lesionados. Véase H.R. Rep. No. 94-1558, 1976, pág. 1. Sin embargo, en la esfera federal, al igual que en la local, no existe un método consistente para la imposición de honorarios razonables. Véase Comentario, *Attorney's Fees in Civil Rights Cases: Contingent Fee Awards Under Section 1988*, 17 Pac. L.J. 1275 (1986) (en adelante *Attorney's Fee*).

El informe legislativo de la mencionada sec. 1988 alude al caso *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5to Cir. 1974), en el cual se establecieron doce (12) elementos que se deben tomar en consideración al calcular los honorarios. Éstos son muy similares a los contenidos en el Canon 24 de nuestro Código de Ética Profesional, 4 L.P.R.A. Ap. IX, a saber:

(1) El tiempo y trabajo requeridos[;] ...
(2) la novedad y dificultad de las cuestiones implicadas[;] ...
(3) la habilidad requerida al abogado para llevar el caso[;] ...
(4) si el aceptar la representación del caso ha de impedir al abogado hacerse cargo de otros casos[;] ...
(5) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios generales[;] ...
(6) la contingencia o certeza de la compensación[;] ...
(7) limitación de tiempo impuesta por el cliente o por otras circunstancias[;] ...
(8) la cuantía envuelta en el litigio y los beneficios que ha derivado el cliente de los servicios del abogado[;] ...

(9) la experiencia, reputación y habilidad de los abogados[;]
...
(10) los efectos negativos de ser asociado con ese caso en particular[;] ...
(11) la extensión de la relación abogado-cliente[;] ...
(12) la cuantía concedida en casos similares. (Traducción nuestra y énfasis suprimido.) *Johnson v. Georgia Highway Express, Inc.*, supra, págs. 717–720.

Los factores esbozados en *Johnson v. Georgia Highway Express, Inc.*, supra, han recibido críticas por no especificar a qué factores, si a algunos, se les debe dar más peso que a otros; porque algunos son redundantes, y por no ofrecer una guía objetiva. A pesar de estas críticas, la mayoría de los tribunales los ha adoptado. *Attorney's Fee*, supra, pág. 1285.

Por su parte, en el caso *Hensley v. Eckerhart*, 461 U.S. 424 (1983), el Tribunal Supremo federal se enfrentó al cálculo de los honorarios cuando la victoria de los demandantes fue una parcial. En este contexto, el tribunal utilizó como punto de partida para calcular los honorarios, las horas razonablemente trabajadas por el abogado, multiplicadas por una tarifa razonable. Esta suma fue denominada *lodestar. Hensley*, supra, pág. 433; *Blum v. Stenson*, 465 U.S. 886, 896–902 (1984); *Lipsett v. Blanco*, 975 F.2d 934, 937 (1er Cir. 1992); *In re Thirteen Appeals Arisiug Out of San Juan*, 56 F.3d 295, 305 (1er Cir. 1995).

Bajo este método de horas por tarifa, los abogados que solicitan los honorarios vienen obligados a someter evidencia que sustente las horas trabajadas y la tarifa reclamada. A su vez, deben excluir del cómputo las horas excesivas, redundantes o innecesarias. Se entiende que la complejidad o novedad de un caso se verá reflejada en la cantidad de horas trabajadas. *Blum v. Stenson*, supra, pág. 889. Por su parte, los tribunales deben revisar la alegada razonabilidad de las horas trabajadas. *Hensley v. Eckerhart*, supra, pág. 434; *Grendel's Den, Inc. v. Larkin*, 749 F. 2d 945, 952 (1er Cir. 1984).

Los abogados deben llevar una relación escrita contemporánea al momento en que realizaron las tareas (*contemporaneous time record*). Si omiten llevar este control detallado, la suma reclamada podrá ser reducida o denegada. *Grendel's Den, Inc. v. Larkin*, supra, pág. 952.

En cuanto a la tarifa del abogado, los casos federales y el historial legislativo de la sec. 1988 aluden a la tarifa prevaleciente en el mercado. *Blum v. Stenson*, supra, pág. 895. Para justificar su tarifa, los abogados deben someter un memorando en el que indiquen su preparación académica y experiencia profesional, entre otros. *Grendel's Den, Inc. v. Larking*, supra, pág. 955.

El resultado de la multiplicación de las horas trabajadas por la tarifa del abogado (*lodestar*) se presume que es razonable. *Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546 (1986). En casos de éxito excepcional, el tribunal estaría justificado para aumentar la cuantía concedida. *Blum v. Stenson*, supra, págs. 898–901; *Hensley v. Eckerhart*, supra, pág. 435.

Presentado el memorando de honorarios, los tribunales de distrito tienen discreción para determinar la cuantía de honorarios, sin embargo, deben consignar en el expediente judicial las razones para otorgar determinada cantidad. *Hensley v. Eckerhart*, supra, pág. 439. Expresiones generales concernientes a la razonabilidad serán insuficientes para sostener la determinación en apelación. Íd., pág. 439 esc. 15. A su vez, en los casos federales se ha enfatizado que la solicitud de honorarios de abogados no debe resultar en un segundo litigio. Íd., pág. 437.

Por otra parte, en *Lipsett v. Blanco*, supra, el primer circuito de apelaciones federal confirmó el aumento de la suma base determinada por el tribunal de distrito federal. Los demandados objetaron el aumento y, entre otras razones, alegaron que la demandante tenía abogados en exceso. El tribunal apelativo concedió deferencia a la determinación de razonabilidad del tribunal de distrito en cuanto al

número de abogados en el litigio y se refirió a la defensa de los demandados de la manera siguiente:

> Appelants mounted a Stalingrad defense, resisting Lipsett at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree. (Énfasis suplido.) *Lipsett v. Blanco*, supra, pág. 939.

Cabe señalar que en este caso los honorarios de abogados excedieron la cuantía concedida a la demandante como indemnización. Al respecto, el Tribunal de Circuito de Apelaciones expresó:

> ... In this instance, the discrepancy is explained largely by what we have referred to as the *"Stalingrad defense"*. While this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside. *The defendants suffer the adverse effects of that downside here.* There is a corollary to the duty to defend to the utmost —the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client. Although tension exists between the two duties, they apply concurrently. When attorneys blindly pursue the former, their chosen course of action may sometimes prove to be at the expense of the latter. (Énfasis suplido.) *Lipsett v. Blanco*, supra, pag. 941.

De esta manera quedó plasmado que los demandados que recurren a métodos hostiles de defensa, de resultar perdidosos, tendrán la obligación de compensar al abogado del demandante por cada hora invertida en responder a la estrategia de defensa antes descrita.

El método del *lodestar*, a su vez, ha recibido críticas, pues al igual que los factores expuestos en *Johnson v. Georgia Highway Express, Inc.*, supra, deja un margen muy amplio a la arbitrariedad al no establecer criterios objetivos. En consecuencia, algunos críticos sostienen que la incertidumbre que rodea el cómputo de honorarios desalienta la práctica de casos de derechos civiles, ya que los abogados tienen que especular sobre sus posibles honorarios. *Attorney's Fees*, supra, págs. 1287–1288.

## II

■ Habiendo revisado la experiencia en la esfera fe-
deral con los modelos adoptados en *Johnson v. Georgia
Highway Express, Inc.*, supra, y en *Hensley v. Eckerhart*,
supra, y sus respectivas críticas, consideramos prudente
establecer en nuestra jurisdicción los criterios que han de
ser ponderados al otorgar una compensación por honora-
rios en casos al amparo de la Ley Núm. 100, *supra*. En
ausencia de una disposición legislativa sobre estos extre-
mos, tenemos la ineludible obligación de pautar las normas
aplicables. Por lo tanto, establecemos que, de ordinario, la
cuantía que podrá recibir el abogado de un trabajador vic-
torioso en una reclamación al amparo de la Ley Núm. 100,
*supra*, será el veinticinco por ciento (25%) de la indemni-
zación base concedida al trabajador.(¹)

■ Estimamos razonable este por ciento, tomando
como punto de partida que la Ley Núm. 80 de 30 de mayo
de 1976 (29 L.P.R.A. sec. 185a *et seq.*), sobre despido injus-
tificado, establece que cuando el tribunal crea que el des-
pido fue efectuado sin justa causa, éste ordenará al pa-
trono depositar una suma para honorarios de abogado, *no
menor del quince por ciento (15%) del total de la compen-
sación del trabajador.* 29 L.P.R.A. sec. 185k(b), según
enmendada. Como regla general, los casos por discrimen
son más complicados y costosos que los casos al amparo de
la Ley Núm. 80, *supra*. Aquéllos, por lo regular, requieren
un descubrimiento de prueba costoso ya que, en la mayoría
de los casos, la evidencia del supuesto discrimen está en
manos del patrono. Además, usualmente, los abogados de
los trabajadores demandantes cuentan con menos recursos
que los abogados de los patronos. Al la Ley Núm. 100, *su-
pra*, establecer que el patrono perdidoso pagará al abogado

---

(¹) Esto es antes de duplicarla según establece la Ley Núm. 100 de 30 de junio
de 1959 (29 L.P.R.A. sec. 149 *et seq.*).

del demandante una suma razonable en honorarios, intenta nivelar esta desventaja económica.

Entendemos que estimar los honorarios de abogados en un veinticinco por ciento (25%) de la indemnización base, en este tipo de caso, permite que los trabajadores vindiquen sus derechos, a la vez que se compensa justamente a los abogados que invierten su trabajo y esfuerzo en este tipo de reclamación.

 Por otra parte, en aquellas situaciones cuando el abogado estime que el esfuerzo realizado, el impacto o resultado excepcional del caso, o el haber enfrentado una defensa hostil justifican el recibir una cuantía mayor en concepto de honorarios, éste podra solicitar al tribunal su visto bueno para cobrar una tarifa a base de las horas trabajadas. En dicho caso, el abogado estará obligado a presentar un memorando juramentado en el que detalle las horas trabajadas y la tarifa que habrá de cobrar por hora. De esta forma el tribunal podrá evaluar su razonabilidad.[2] Para tales efectos, el abogado tomará en consideración lo siguiente:[3]

a. *Horas trabajadas y labor realizada*: deberá desglosar el tiempo invertido en el caso y especificar las tareas realizadas. Incluirá el trabajo realizado en revisiones y apelaciones, y en procedimientos administrativos, de ser ese el caso. Véase *Parker v. Califano*, 561 F.2d 320 (D.C. Cir. 1977).

b. *Tarifa que cobra por hora en este tipo de caso*: el abogado deberá justificar su tarifa aludiendo a su experiencia, preparación y a cuánto se cobra tradicionalmente en ese tipo de casos. Podrá someter declaraciones juradas de otros abogados en las cuales éstos indiquen sus tarifas.

---

[2] Puede darse el caso de que el cálculo de horas por tarifa sea menor que el veinticinco por ciento (25%) de la indemnización. Los abogados tienen la opción de reclamar bajo este método o recibir el por ciento antes indicado.

[3] El tribunal podrá solicitar al abogado cualquier otra información pertinente que pueda ayudarle a evaluar la razonabilidad de la cuantía solicitada en concepto de honorarios.

■ En el cálculo de las horas trabajadas, el tribunal eliminará las horas excesivas o repetitivas. Véase *Grendel's Den, Inc. v. Larking*, supra, pág. 950. A su vez, el tribunal utilizará su propia experiencia y pericia en decidir cuánto tiempo, dedicado a determinada tarea, es realmente razonable. Véase *Johnson v. George Highway Expreso, Inc.*, supra, pág. 717. Por otra parte, debe tener en cuenta también que la novedad y dificultad de las controversias, de ordinario, requieren más esfuerzo y dedicación por parte de los abogados. Estos aspectos se verán reflejados en el número de horas trabajadas. Véanse: *Blum v. Stenson*, supra, pág. 898; *Johnson*, supra, pág. 718. De igual forma, si los demandados recurren a una defensa hostil como la esbozada en *Lipsett v. Blanco*, supra, de resultar perdidosos verán el resultado de dicha estrategia reflejado en el número de horas reclamadas por los abogados del demandante.

■ El abogado del demandante tiene el peso de la prueba en demostrar que las horas trabajadas y su tarifa son razonables. Para esto es fundamental que cuente con una relación escrita contemporánea al momento cuando realizó la tarea. Véase *Grendel's Den, Inc. v. Larking*, supra.

■ Por su parte, el tribunal de instancia tendrá discreción para aceptar o modificar la suma de honorarios reclamada en el memorando, pero siempre deberá consignar por escrito sus razones para llegar a determinada suma. Sólo de esta manera ese cálculo podrá ser revisable y se evitarán abusos de discreción. Véanse: *Wells v. New Cherokee Corp.*, 58 F. 3d 233, 239 (6to Cir. 1995); *Hensley v. Eckerhart*, supra, pág. 437. A su vez, los tribunales apelativos no intervendrán con la determinación de honorarios realizada en instancia, excepto en casos de abuso de discreción. Véase *Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4to Cir. 1988). Finalmente deseamos enfatizar que el cál-

culo de los honorarios según la Ley Núm. 100, *supra, no debe convertirse en un segundo litigio.*

## III

En el caso de autos, procede en reconsideración que dejemos sin efecto nuestra determinación inicial a favor de López Vicil por veinte mil dólares ($20,000) en concepto de honorarios de abogado. Al abogado del demandante le corresponde preliminarmente el veinticinco por ciento (25%) de la indemnización base que López Vicil reciba, la cual será determinada una vez el tribunal de instancia evalúe si procede la reinstalación del demandante a su antiguo puesto. El abogado, a su discreción, podrá someter el memorando jurado antes indicado para así obtener un aumento en sus honorarios, si ese fuera el caso. De presentarse el memorando, el tribunal lo evaluará acorde con lo expresado en esta opinión.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente y disidente en reconsideración. El Juez Asociado Señor Rebollo López no intervino.

## — O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

### (En reconsideración)

En respuesta a una moción de reconsideración presentada por el abogado de la parte demandante, hemos decidido reconsiderar nuestro dictamen previo en el caso de autos, en lo que se refiere a la cantidad que debe pagar el patrono perdidoso en concepto de honorarios de abogado.

Concurro con la mayoría en que debemos reconsiderar este aspecto de nuestra decisión anterior. Aunque en ella

aumentamos la cantidad que debía pagarse en concepto de honorarios de abogado, y la fijamos en la respetable suma de $20,000, luego de una reflexión mayor, considero ahora que dicha cantidad puede no ser adecuada a las realidades del caso. En particular, considero que debe ser el foro de instancia el que determine los honorarios que han de fijarse, luego de escuchar a las partes sobre este asunto y recibir la prueba correspondiente. Es dicho tribunal el que mejor conoce la labor desplegada ante sí por el abogado de la parte demandante, y el que está en mejor posición para estimar lo que esa labor vale. De ese modo se cumple a cabalidad con el mandato de ley, de que en casos en los cuales un empleado reclame exitosamente contra su patrono, es el patrono quien debe pagar los honorarios del abogado que prestó servicios legales al reclamante. Ley Núm. 402 de 12 de mayo de 1950, según enmendada por la Ley Núm. 90 de 3 de junio de 1980 (32 L.P.R.A. secs. 3114–3117).

Con lo que no estoy de acuerdo es con la decisión de la mayoría de ordenar que en este caso, como en otros de reclamaciones laborales análogas, se pagarán automáticamente honorarios *mínimos* de 25% de la indemnización base concedida al reclamante. Creo que tal decisión constituye una actuación desacertada y *ultra vires* de la mayoría. Ésta se abroga una función legislativa que no tiene, contraviene la intención que informa la legislación en cuestión, menoscaba lo que dispone el Código de Ética Profesional de los abogados y nuestra propia jurisprudencia anterior sobre el particular, y no ofrece una norma que sea realmente adecuada para pautar este asunto. Su postura se basa en decisiones de otras jurisdicciones, ajenas a nuestra realidad y a lo que realmente nos concierne aquí. Por todo ello, disiento.

## I

De entrada debe notarse que no hay nada en las fuentes

jurídicas de mayor jerarquía *del ordenamiento jurídico puertorriqueño* que autorice, o siquiera dé pie, para lo que decreta la mayoría del Tribunal en este caso. Ni la legislación que nos concierne aquí ni los precedentes pertinentes de este Foro contienen fundamento alguno que justifique la imposición de un porcentaje de lo obtenido como medio para determinar honorarios de abogado en casos como el de autos.

De un análisis contextual de la referida ley sobre honorarios de abogado en reclamaciones laborales (en adelante la Ley), se desprende con suficiente claridad la intención del legislador no sólo de encomendar concretamente la determinación de honorarios *al propio tribunal de instancia* que entendió en los méritos de la reclamación laboral, sino, además, de que este asunto *no se resuelva* a base de *un porcentaje* de lo que haya obtenido el trabajador o empleado que instó la reclamación.

El Art. 2 de la referida Ley, 32 L.P.R.A. sec. 3115, dispone con claridad que el asunto de los honorarios de abogado en casos de reclamaciones laborales los fijará el tribunal de instancia que hubiese tenido jurisdicción sobre el caso. Se señala allí expresamente que cuando un trabajador o empleado presenta una reclamación laboral contra su patrono en un tribunal de Puerto Rico, y se concede tal reclamación en todo o en parte, el tribunal deberá condenar al patrono al pago de los honorarios del abogado del trabajador o empleado. Se indica, además, que si el tribunal dicta sentencia a favor del patrono, no se condenará al trabajador o empleado al pago de los honorarios de abogado. En dicho artículo incluso se dispone que si la reclamación laboral en sí se resuelve extrajudicialmente, pero las partes no logran ponerse de acuerdo sobre los honorarios que el patrono querellado debe pagar al abogado del trabajador o empleado querellante, tal cuestión debe someterse "al tribunal que hubiera tenido jurisdicción sobre el caso". 32 L.P.R.A. sec. 3115.

No cabe duda, pues, de que el legislador encomendó específicamente al tribunal de instancia la determinación de

todo lo relativo a lo de honorarios de abogado en estos casos, excepto cuando existe una transacción extrajudicial y las partes logran ponerse de acuerdo sobre ello. Esta encomienda se hizo en la Ley, sin que *el legislador le fijase pautas o limitaciones al tribunal* en cuanto a este asunto. Es decir, dicho asunto se dejó libremente al juicio del foro de instancia, o de las partes en caso de transacción extrajudicial. No se señala en la Ley, de ninguna manera, que los honorarios deben ser un *porcentaje* de lo que haya obtenido el trabajador o empleado reclamante.

Es evidente que el legislador pudo haber dispuesto lo del porcentaje como el *modo* de determinar los honorarios en cuestión, pero no lo hizo, prefiriendo dejar que ello quedase para ser decidido por el propio tribunal. Nótese que el legislador estaba plenamente consciente de la alternativa de fijar el pago de honorarios de abogado a base de un porcentaje de lo obtenido. Tan consciente estaba, que expresamente *prohibió*, en los Arts. 1 y 3 de la misma Ley, 32 L.P.R.A. secs. 3114 y 3116, que una organización obrera contratase el pago de los servicios que le prestase su abogado a base de un porcentaje de cualquier beneficio adquirido para los trabajadores a través de la negociación colectiva. Esta parte de la Ley demuestra innegablemente que el legislador conocía que el pago de honorarios de abogado podía hacerse a base del porcentaje. Prohibió tal modo de pago expresamente, para las situaciones referidas, por considerarlo "en detrimento de la paz industrial". Por ello, este Tribunal no debe imponerlo como modo para que los foros de instancia cumplan con la responsabilidad que se les encomienda de determinar los honorarios de abogado en casos de reclamaciones laborales. No tenemos la facultad de *añadirle* al esquema legislativo lo que el legislador no dispuso, sobre todo cuando lo que se pretende añadir es algo claramente no favorecido por el legislador. *Román v. Superintendente de la Policía*, 93 D.P.R. 685

(1966); *Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964).

Más aun, la decisión de la mayoría sobre el porcentaje no encuentra apoyo alguno en los *precedentes* de este Tribunal. En varias ocasiones antes hemos examinado la razonabilidad de los honorarios concedidos por foros de instancia bajo la legislación que nos concierne aquí. Incluso hemos examinado su constitucionalidad. *En ninguna de las opiniones, que hemos emitido antes sobre esta ley, hemos resuelto que los honorarios deben fijarse a base de un porcentaje de lo obtenido por el reclamante.* Por el contrario, hemos resuelto expresamente que los honorarios deben ser determinados en cada caso por el foro sentenciador conforme a su sano juicio. *Berríos v. Eastern Sugar Associates*, 79 D.P.R. 688 (1956); *Acosta v. Floor Coverings Co.*, 78 D.P.R. 490 (1955); *Micheo v. Vallés*, 76 D.P.R. 22 (1954); *Lozada v. Antonio Roig, Sucrs.*, 73 D.P.R. 266 (1952). Igual postura asumimos en otra opinión nuestra, en la cual examinamos los honorarios concedidos por el foro de instancia bajo la legislación similar que antecedió la Ley que nos ocupa en el caso de autos. En esta otra opinión expresamente reconocimos que los honorarios de abogado en casos de reclamaciones laborales *no han de concederse a base de una cantidad predeterminada*, sino que la fijación de éstos queda a la sana discreción del tribunal sentenciador. *Feliciano v. P.R. Express Co.*, 67 D.P.R. 377 (1947).

Ni la Ley ni los precedentes, pues, dan base para lo que la mayoría, por puro fíat, decretó en este caso.

## II

Existen razones de mucho peso que explican por qué ni el legislador ni este Tribunal han impuesto antes el pago de honorarios en casos de reclamaciones laborales a base de un porcentaje.

Una de estas razones es el hecho evidente de que las reclamaciones laborales contempladas en la Ley, que no se limitan de modo alguno sólo a las reclamaciones según la Ley Núm. 100, *supra*, son *de naturaleza muy diversa*, y no resulta adecuado que todas las variadas situaciones que pueden surgir bajo ésta se atiendan automáticamente mediante la norma del porcentaje de lo obtenido. Así pueden haber reclamaciones laborales en las cuales concurren en la querella cientos de trabajadores, pero el esfuerzo del abogado que los representa es el mismo que éste hubiese hecho si la reclamación la hubiese instado sólo un trabajador. En tales casos, la concesión de honorarios a base de un porcentaje de lo obtenido no guardaría proporción razonable alguna con el trabajo realmente realizado por el abogado. Por eso, en *Lozada v. Antonio Roig, Sucrs.*, supra, en el cual la representación legal instó exitosamente una acción a nombre de más de cien obreros, cada uno de los cuales tenía la misma reclamación contra el patrono, resolvimos que la suma que ha de concederse en concepto de honorarios de abogado debía ser por el esfuerzo desplegado por el procedimiento instado, y no por lo obtenido individualmente por cada uno de los obreros. Señalamos que, de resolver de otro modo, se produciría un resultado irrazonable. Igual sucedería si se hubiese aplicado a tal caso la norma de un porcentaje de la compensación obtenida. El abogado se hubiera lucrado de una manera irrisoria.

La naturaleza diversa de las reclamaciones contempladas por la Ley también queda ilustrada por el hecho de que en ocasiones existen diferencias importantes con respecto a los tipos de trabajadores que puede reclamar. Así pues, el que sufre una acción adversa de un patrono puede ser lo mismo un humilde obrero que un alto ejecutivo de nivel gerencial. En términos jurídicos, ambos pueden tener la misma reclamación, y la labor de representación legal puede ser igual, pero la compensación que se obtendría

puede ser sustancialmente distinta debido a las obvias diferencias en los niveles salariales de los reclamantes aludidos. En tal situación, si se aplica el método del porcentaje, los honorarios de abogado que el patrono tendrá que pagar serán muy dispares, aunque el servicio prestado sea igual. Incluso cabe la posibilidad de que en el caso del empleado gerencial, la labor de representación legal sea más fácil por el acceso que dicho empleado haya tenido a la información sobre el patrono, que un mero obrero no tendría. Entonces resultaría que, según el método del porcentaje, el abogado recibiría una compensación sustancialmente mayor en el caso del empleado gerencial de altos salarios que en el caso del obrero de salario modesto, aunque el trabajo del abogado en cuanto al primero fue menor que en el segundo. Como en el ejemplo del párrafo anterior, el uso de la norma de un porcentaje de lo obtenido produciría resultados irrazonables también en esta instancia.

Además, debe considerarse que la ley sobre honorarios de abogado en reclamaciones laborales aplica no sólo a casos en los cuales se reclama una suma de dinero del patrono, sino también a aquellos en los que sólo se reclama que se le reconozca algún derecho al trabajador. En tales casos, la norma de pagar honorarios a base de un porcentaje de lo obtenido es evidentemente inadecuada para compensar al abogado que prestó servicios al trabajador.

Al ponderar las limitaciones serias que tiene la norma del porcentaje en cuestión, es menester recordar que el propósito primordial de la Ley que nos concierne *no es* imponer una penalidad adicional al patrono perdidoso. La Ley en cuestión sólo persigue evitar que el empleado pierda algo del valor de su trabajo, como ocurriría si tiene que pagar de su sueldo los honorarios del abogado que lo auxilia en una reclamación contra su patrono. Todo lo que la Ley dispone es que el servicio prestado al trabajador que reclama exitosamente lo tiene que pagar el propio patrono. Éste carga con los honorarios del abogado del trabajador

*aún en casos de disputas legítimas* entre el patrono y el trabajador, si este último finalmente resulta exitoso en todo o en parte. No se trata de honorarios *por temeridad,* los que impone esta Ley. En vista de lo anterior, lo que se le encomienda al foro de instancia que entendió en la reclamación, es que determine lo que razonablemente debe compensarse al abogado que prestó el servicio. Ello se hace óptimamente, no a base de fórmulas predeterminadas de aplicación automática, sino caso a caso, ponderando según las circunstancias concretas del caso, cuál es el valor real de los servicios actualmente rendidos, independientemente de la cantidad obtenida en el litigio.

Debe advertirse, además, que aunque de inmediato sea el patrono quien paga los honorarios de abogado del trabajador, a la larga el peso de tal retribución cae realmente sobre la sociedad en general. No hay que ser un erudito en el campo de la economía para comprender que el patrono, sino de inmediato, eventualmente pasará tal cargo a las personas que compran sus productos o servicios. El consumidor, y luego la sociedad en general, son los que a fin de cuentas costean los honorarios dispuestos por la Ley.

Lo anterior es particularmente cierto en casos en los cuales los patronos son determinadas instrumentalidades públicas. A modo de ejemplo concreto de ello, cabe mencionar un caso que vino ante nos recientemente por razón de una disputa entre los abogados de los reclamantes sobre cómo distribuirse los honorarios concedidos en el caso. En éste, una corporación pública había tenido una grave discrepancia con sus cientos de empleados sobre el pago de vacaciones acumuladas. El asunto fue sometido a arbitraje y se resolvió a favor de los empleados. La corporación pública aceptó el dictamen arbitral y acordó un pago de 17 millones de dólares para los empleados. También acordó pagar *$2.55 millones* en honorarios de abogado. Según la decisión de la mayoría en el caso de autos, si el pleito referido hubiese ocurrido a partir de esta decisión, los aboga-

dos hubiesen podido reclamar *$4.25 millones* en honorarios, cantidad que la pagaría, no un patrono privado, sino el Pueblo de Puerto Rico.

## III

Existe otra razón de gran peso que explica por qué no debe aplicarse al asunto que aquí nos concierne el método del porcentaje para determinar honorarios de abogado. Tiene que ver con la naturaleza de la abogacía como una *profesión.*

El Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece la norma fundamental que rige el asunto de la fijación de honorarios de abogado en nuestra jurisdicción. La norma que allí se establece parte expresamente del principio de que "nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro". Conforme a este principio, en cada caso el valor de los honorarios que han de fijarse debe hacerse tomando en cuenta los distintos factores que el citado Canon 24 enumera concretamente. Ello es indispensable para que los servicios que preste el abogado no se estimen "en más ni en menos de lo que realmente valen".

Un mero examen literal de los factores que enumera el Canon 24 del Código de Ética Profesional, *supra*, para fijar el valor de los honorarios demuestra que la "cuantía envuelta en el litigio" es sólo uno de estos factores. De igual o mayor importancia son factores tales como: "el tiempo y trabajo" dedicado al servicio profesional, "la novedad y dificultad de las cuestiones envueltas" y "la habilidad que requiere conducir propiamente el caso". Íd.

El Canon 24 del Código de Ética Profesional, *supra*, también preceptúa el carácter excepcional de los honorarios contingentes. Éstos no constituyen el método ordinario para fijar lo que justamente debe pagarse a un abogado por

sus servicios. Su uso sólo procede en casos muy especiales, en los cuales existen razones que claramente lo justifican en beneficio, no del abogado, sino de clientes indigentes o en circunstancias de indefensión. En efecto, reiteradamente hemos señalado que el pago de servicios profesionales mediante honorarios contingentes es algo que siempre debe mirarse "con prevención, que debe evitarse, ya que son muchas las razones fundamentales que militan en su contra". *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R. 772 (1981); *Franqui v. Fuertes Hnos., S. en C.*, 44 D.P.R. 712 (1933).

Todo lo anterior es parte de una venerable tradición que concibe la abogacía como una profesión, en la cual se honra el servicio que se presta a la persona que lo necesite y se desdeñan meras consideraciones de lucro, que preconiza que el servicio que presta el abogado se pague con arreglo al *carácter de la actividad desplegada, Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989), y que no debe medirse *exclusivamente por la cuantía* de la reclamación, *López de Victoria v. Rodríguez*, 113 D.P.R. 265 (1982); que mira con grave recelo que el abogado adquiera de antemano un interés propio en el asunto en litigio, o que se acuerde de antemano que el abogado ha de hacer suyo una parte alícuota de la cosa que se litiga. *Franqui v. Fuertes Hnos., S. en C.*, supra, págs. 716–725. Se trata de una tradición que estima que no es el éxito en la litigación sino el estudio llevado a cabo por el abogado, su actividad y su esfuerzo lo que debe ser objeto de remuneración. *Antonsanti & La Costa v. Sucn. Axtmayer*, 38 D.P.R. 782, 788 (1928).

La fijación de honorarios, que decreta la mayoría en este caso a base de un porcentaje de lo obtenido, se hace sin justificación especial alguna para ello. Se establece una nueva instancia de honorarios contingentes, sin demostrar por qué en este campo debe recurrirse a tales honorarios. No hay señalamiento alguno sobre clientes desvalidos, que

tradicionalmente ha sido la justificación para usar este modo de retribuir al abogado. Lo que decreta la mayoría en este caso, pues, es claramente contrario a lo que dispone el Canon 24 del Código de Ética Profesional, *supra*, y a lo que preconiza la tradición profesional aludida antes. El factor predominante en la norma del porcentaje es la cantidad obtenida por el trabajador, no la calidad e intensidad del esfuerzo desplegado por el abogado, lo que contraviene el principio fundamental sobre honorarios de nuestra profesión.

## IV

En el caso de autos, el foro de instancia había fijado honorarios de abogado por la cantidad de $15,000. El Tribunal de Circuito de Apelaciones revocó tal dictamen y eliminó los honorarios concedidos. Nosotros, en revisión, concedimos $20,000 por este concepto. Ahora, la mayoría, en una segunda reconsideración, opta por aumentar a un *mínimo de $110,368* lo que se otorgaría por honorarios de abogado, sin siquiera oír a la parte contraria sobre el particular.

Me temo que esta inusitada decisión de la mayoría ha de tener consecuencias adversas para la práctica profesional en el campo de las reclamaciones laborales. Se trata de un campo en el cual tradicionalmente se han desempeñado abogados íntimamente identificados o comprometidos con los derechos de los trabajadores. Nunca hemos tenido noticias de que estos abogados, especializados en tales asuntos laborales, se sintieran contrariados o impedidos de llevar a cabo su valiosa labor, por consideraciones relativas a honorarios de abogado. La decisión de la mayoría en este caso introduce ahora en este campo un jugoso incentivo para que otros tipos de abogados, de una orientación más mercantilista, lo invadan. El frío cálculo de lucro adquiere ahora nuevas dimensiones en la dinámica del ejercicio

profesional. Podemos anticipar no sólo un aumento en las reclamaciones inmeritorias y en los litigios que se extienden innecesariamente, sino también en la comercialización de la profesión; más algún desplazamiento de los abogados con especial vocación para la protección de los derechos de los trabajadores, todo lo cual es muy lamentable.

Por todas las razones señaladas, creo que es un error que en casos como el de autos se sustituya la apreciación de los tribunales de instancia sobre honorarios de abogado por la rígida norma de un porcentaje de lo obtenido, como hace la mayoría aquí, por puro fíat. Por ello, disiento.