Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JORGE RIVERA CAMACHO **Apelado** <br><br> V. <br><br> PUBLI-INVERSIONES DE PUERTO RICO **Apelante** | KLAN202400677 CONS. KLAN202400686 KLCE202400934 | *APELACIÓN* procedentes del Tribunal de Primera Instancia, Sala Superior de Bayamón <br><br> Civil Núm: BY2018CV01874 <br><br> Sobre: Despido Injustificado (Ley 80-1976) Discrimen |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de octubre de 2024.

El 17 de julio de 2024, Publi-Inversiones de Puerto Rico, Inc. (Publi-Inversiones) compareció ante nos mediante *Apelación* en el caso núm. KLAN202400677. Por su parte, el 18 de julio de 2024, el Sr. Jorge Rivera Camacho (señor Rivera) compareció ante nos mediante *Apelación* en el caso núm. KLAN202400686. En ambos recursos, las partes solicitaron la revisión de una *Sentencia* que se emitió y notificó el 1 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Demanda* que presentó el señor Rivera en cuanto al despido injustificado. Así pues, condenó a Publi-Inversiones al pago de mesada por la cantidad de $102,729.00 y al 15% por concepto de honorarios de abogado. Por último, desestimó la causa de acción de discrimen por edad por el señor Rivera no haber probado las alegaciones en cuanto a este asunto.

De igual forma, ambas partes solicitaron la revisión de una *Resolución* que el TPI emitió y notificó el 28 de junio de 2024

Número Identificador

SEN2024 _____

mediante la cual aumentó el porcentaje concedido por concepto de honorarios de abogado de un 15% a un 25%.

Por otro lado, el 29 de agosto de 2024, Publi-Inversiones presentó una *Petición de Certiorari* en el caso núm. KLCE202400934 y solicitó la revisión de una *Orden* que dictó el TPI el 15 de agosto de 2024 y notificó el 19 de agosto de 2024. Mediante el aludido dictamen, el TPI condenó a Publi- Inversiones al pago de costas en el término de diez (10) días.

A tenor con la Orden Administrativa Núm. DJ 2019-316, según enmendada por la Orden Administrativa Núm. DJ 2019-316A que emitió la Jueza Presidenta del Tribunal Supremo, la Hon. Maite Oronoz Rodríguez, y a tenor con la Orden Administrativa Núm. TA 2021-092 que emitió el Juez Administrador del Tribunal de Apelaciones, Hon. Roberto Sánchez Ramos, ordenamos la consolidación del caso núm. KLAN202400686, con el de mayor antigüedad, el caso núm. KLAN202400677. Posteriormente, de conformidad con lo antes expresado, ordenamos la consolidación del KLCE202400934 con los casos KLAN202400677 y el KLAN202400686.

I.

## I. KLAN202400677

A continuación, resumimos los hechos pertinentes para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración y del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

El 10 de agosto de 2019, el señor Rivera presentó una *Demanda* sobre despido injustificado y discrimen por edad en contra de Publi- Inversiones, Compañía de Seguros X y Richard Doe y Jane Doe al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, mejor conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80-1976) y la Ley Núm. 100 de

30 de junio de 1959, según enmendada, conocida como *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq.* (Ley Núm. 100-1959).[1] Alegó que, en el año 1982, fue reclutado mediante contrato de empleo sin tiempo determinado para fungir como mecánico en el área de prensa del periódico *El Vocero de Puerto Rico* (El Vocero) realizando servicios de mantenimiento y reparación. Sostuvo que, posteriormente, el 22 de noviembre de 2013, Publi-Inversiones adquirió El Vocero y continuó con las operaciones de este último. Señaló que, en vista de ello, Publi-Inversiones se convirtió en el patrono sucesor por lo que asumió las responsabilidades y obligaciones laborales de El Vocero.

Por otro lado, indicó que el 31 de noviembre 2013, El Vocero lo despidió ilegalmente. Sin embargo, señaló que, alrededor del 1 de diciembre de 2013, Publi-Inversiones le envió una carta a todos los empleados de El Vocero en la que les informó que tenían que solicitar trabajo con la empresa a través de su Departamento de Recursos Humanos. Así pues, expresó que se comunicó con el Departamento de Recursos Humanos para solicitar trabajo y que posteriormente lo contrataron para que continuara con sus funciones como mecánico. No obstante, adujo que, el 12 de enero de 2018, la directora de Recursos Humanos de Publi-Inversiones y su jefe inmediato le notificaron que estaba despedido efectivo inmediatamente. Planteó que Publi-Inversiones nunca le dio razón alguna para el despido. Afirmó que no tenía ninguna amonestación ni acción disciplinaria de índole alguna en su contra y que cumplía con las expectativas de su empleo.

De igual forma, sostuvo que, al momento de su despido, tenía 59 años y que tenía más antigüedad que los demás empleados. Además, alegó que fue el único empleado que fue despedido, que era

---

[1] Véase, págs., 1-6 del apéndice del recurso KLAN202400686.

el que más edad tenía y que las funciones que realizaba ahora las estaba haciendo un empleado mucho más joven que él. Por las razones antes expresadas, concluyó que su despido fue injustificado y por discrimen por edad. Por estos motivos, solicitó el pago de la mesada al amparo de la Ley Núm. 80-1976, *supra*, la cual adujo que ascendía a una cantidad aproximada de $105,160.00 más intereses. De igual forma, reclamó el 25% de la indemnización que en su día el TPI le concedería por concepto de honorarios de abogado. Por último, solicitó que se le impusiera a Publi-Inversiones doble penalidad al amparo de la Ley Núm. 110-1959, *supra*, más honorarios de abogado, gastos y costas de litigio.

En respuesta, el 1 de octubre de 2018, Publi-Inversiones presentó su alegación responsiva.[2] Admitió que había despedido al señor Rivera. Sin embargo, señaló que al señor Rivera se le había contratado por tiempo temporero y que fue despedido ya que su puesto como mecánico en el área de prensa fue eliminado como resultado de una reorganización. Adujo que dicha reorganización se llevó a cabo por cambios tecnológicos con el fin de mejorar los servicios rendidos al público. Además, aclaró que el señor Rivera era el único empleado en su departamento y que en vista de ello y de que su puesto había sido eliminado, no se contrató o designo a ninguna persona para ocuparlo. Así pues, argumentó que no discriminó contra el señor Rivera por razón de edad y que su despido no fue injustificado por lo que no procedía la indemnización reclamada por despido injustificado y tampoco las penalidades solicitadas al amparo de la Ley Núm. 100-1959, *supra*.

Posteriormente, el 31 de octubre de 2019, Publi-Inversiones presentó una *Solicitud de Sentencia Sumaria Parcial* mediante la cual solicitó la desestimación de cualquier causa de acción de

---

[2] Íd., págs.7-14.

patrono sucesor o traspaso de negocio en marcha instada en su contra.[3] Particularmente, sostuvo que, el *Aviso de Venta* que encabezó la transacción de la compra de los activos de El Vocero en el procedimiento de quiebra, estipulaba que este estaba liberado de asumir obligaciones de naturaleza obrero patronales de El Vocero, incluyendo las acciones al amparo de la legislación laboral.

Por otro lado, el 2 de diciembre de 2019, Publi-Inversiones presentó una *Solicitud de Sentencia Sumaria*.[4] Argumentó que, conforme al derecho aplicable, los hechos incontrovertidos y la prueba documental anejada no existía controversia en cuanto a que el despido del señor Rivera fue por justa causa ya que se llevó a cabo por razones relacionadas al buen, normal y mejor funcionamiento de la compañía. Además, añadió que no existía controversia en cuanto a que el despido no fue por razón de discrimen por edad. Así pues, solicitó que se dictara sentencia sumaria desestimando la totalidad de las reclamaciones instadas por el señor Rivera.

Por su parte, el 20 de diciembre de 2019, el señor Rivera presentó una *Oposición a Moción de Sentencia Sumaria Parcial*.[5] En primer lugar, puntualizó que la condición de Publi-Inversiones como sucesor de El Vocero fue un asunto que se atendió en otros foros judiciales y estos estimaron probado el elemento de continuidad sustancial entre las operaciones de dichas compañías. Así pues, razonó que Publi-Inversiones estaba impedido de relitigar dichos asuntos. Por otra parte, reiteró que fue reclutado por El Vocero en el año 1982 y que luego de que se le vendieron los activos a Publi-Inversiones, este último lo retuvo como empleado en las mismas funciones hasta su despido.

---

[3] Véase, Entrada 44, SUMAC.
[4] Véase, Entrada 50, SUMAC.
[5] Véase, Entrada 58, SUMAC.

El 14 de febrero de 2020, el señor Rivera presentó una *Oposición a Moción de Sentencia Sumaria Parcial* rebatiendo los planteamientos de Publi-Inversiones en la *Solicitud de Sentencia Sumaria* radicada el 2 de diciembre de 2019.[6] Así las cosas, el 2 de julio de 2020, el TPI emitió y notificó una *Resolución* denegando la *Solicitud de Sentencia Sumaria* que presentó Publi-Inversiones el 2 de diciembre de 2019 por entender que existían controversia de hechos que impedían dictar sentencia sumaria.[7]

De igual forma, ese mismo día, a saber, el 2 de julio de 2020, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* que presentó Publi-Inversiones el 31 de octubre de 2019.[8] Sin embargo, resolvió que el reclamo de la mesada en el presente pleito, de determinarse que en efecto hubo un despido injustificado, debía calcularse desde que el querellante comenzó a trabajar con Publi-Inversiones ya que esta era la entidad a la que se le imputaba el acto ilegal del despido injustificado. Inconforme con este dictamen en cuanto al asunto relacionado al cálculo de la mesada, el señor Rivera presentó un *Certiorari* ante un panel hermano y el 18 de diciembre de 2020, este foro emitió una *Sentencia* en el caso núm. KLCE202000732 modificando la *Resolución* del TPI a los fines de puntualizar que el cómputo de la mesada se calcularía desde el periodo trabajado con el patrono anterior del señor Rivera.[9]

Luego de un extenso descubrimiento de prueba, se celebró vista en su fondo los días 7, 8 y 9 de marzo de 2022. En las vistas antes mencionadas, el señor Rivera presentó su testimonio, el de la Sra. Ruth Román (señora Román), directora de Recursos Humanos de Publi-Inversiones, el del Sr. Alberto Montalvo (señor Montalvo),

---

[6] Véase, Entrada 75, SUMAC.
[7] Véase, Entrada 86, SUMAC.
[8] Véase, Entrada 87, SUMAC.
[9] Véase, Entrada 100, SUMAC.

prensista, y el de su esposa, la Sra. Milagros Fontánez. Por su parte, Publi-Inversiones presentó prueba testifical que consistía en el testimonio del señor Rivera, el del Sr. Eligió Dekony (señor Dekony), vicepresidente del Departamento de Producción de Publi-Inversiones, el de la señora Román y el Sr. Salavador Hasbún (señor Hasbún), presidente de Publi-Iversiones.

Luego de celebradas las vistas, el 21 de marzo de 2022, Publi-Iversiones presentó una *Moción de Desestimación* [...].[10] En esta, argumentó que el señor Rivera no logró probar los elementos requeridos para sostener sus alegaciones mediante la prueba testifical y/o documental que se presentó en el juicio en su fondo. De este modo, sostuvo que el TPI debía desestimar la presente reclamación conforme las disposiciones de la Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c). El 12 de abril de 2022, el señor Rivera presentó una *Oposición a Moción de Desestimación* [...] negando la alegación antes expuesta.[11] En respuesta a estas mociones, el 12 de julio de 2022, el TPI emitió una *Resolución* que se notificó el 13 de julio de 2022, en la cual indicó que se reservaba el fallo en cuanto a la solicitud de desestimación hasta culminar la prueba del juicio en su fondo. En consecuencia, ordenó la continuación de los procedimientos.[12] Posteriormente, en las fechas del 18 de julio de 2022, el 30 de agosto de 2022, el 14 de diciembre de 2022 y el 31 de enero de 2023 se celebraron el restante de las vistas en su fondo y el 31 de enero de 2023, el caso quedó sometido para la consideración del TPI.

Así las cosas, el 1 de mayo de 2024, el TPI emitió y notificó una *Sentencia*.[13] En primer lugar, realizó las siguientes determinaciones de hechos:

---

[10] Véase, Entrada 146, SUMAC.
[11] Véase, Entrada 163, SUMAC.
[12] Véase, Entrada 173, SUMAC.
[13] Véase, Entrada 212. SUMAC.

1. La parte demandante Jorge Rivera trabajó para Caribbean International News hasta el 30 de noviembre de 2013. El demandante nació el 18 de diciembre de 1958. Tenía 59 años al momento del despido al 12 de enero de 2018. Sumando los años que trabajó con CINC y Publi Inversiones equivalen a 36 años de servicio.

2. El salario más alto del demandante era de $39,858.27 anual. El cómputo de la mesada asciende a $102,729.

3. Las funciones de un mecánico de prensa es asegurar que las 18 máquinas de la prensa estén en óptimas condiciones para que la producción de ocho horas del turno de la noche no se afecte ni se detenga para la impresión del periódico El Vocero.

4. Comenzó el 1 de diciembre de 2013 en Publi Inversiones como mecánico de prensa.

5. Al momento en que Caribbean International News se va a quiebra, él recibió un documento donde se le informaba y llenó una solicitud de empleo para Publi Inversiones. Además, se lo notificó su supervisor el Sr. Eligio Dekony. Actualizó la información personal en los documentos, al tener interés en continuar trabajando ahora con Publi Inversiones. Los documentos que completó tienen fecha de 29 de noviembre de 2013.

6. La parte demandante estuvo en un contrato por periodo probatorio desde el 28 de febrero al 13 de abril de 2014.

7. El 11 de abril de 2014 comenzó como empleado regular a tiempo completo conforme el documento contrato de empleo.

8. El horario de trabajo del demandante es de 12:30 de la tarde a las 8:00 p.m. de domingo a jueves.

9. Las funciones como mecánico de prensa constituían en: las reparaciones mecánicas en la prensa y preprensa; responsable del mantenimiento preventivo; inspecciones visuales de la prensa para dicho mantenimiento; mantener el área limpia; ajustes necesarios a la máquina de la prensa; cualquier otra tarea asignada por el supervisor inmediato.

10. El término "prensa" se refiere al conjunto de 18 unidades o máquinas que producen los ejemplares del periódico El Vocero. Las máquinas son marca Goss Urbanite y cada unidad pesa más de 10,000 libras. Las máquinas tienen dos folders para doblar el papel periódico impreso.

11. El demandante continuó trabajando en el mismo puesto de mecánico de prensa, en la misma localidad, bajo las mismas funciones y de manera ininterrumpida desde que comenzó con Caribbean International News para luego pasar a Publi Inversiones. Publi Inversiones

adquirió el negocio en marcha de Caribbean International News.

12.Además de las reparaciones mecánicas existen tareas diarias de mantenimiento para que las máquinas se mantengan en óptimas condiciones.

13. El demandante era el único mecánico de prensa.

14. En julio de 2016 se instalaron unas 18 máquinas restauradas en el área de prensa. La parte demandante continuó realizando las mismas funciones que hacía antes en el turno de ocho horas y cinco días a la semana.

15. Luego del mes de julio, el demandante continuó realizando las mismas funciones en el mismo turno de ocho (8) horas diarias, cinco (5) días a la semana. En su testimonio identificó el equipo y las partes que diariamente requieren que él inspeccione, lubrique, ajuste, calibre, repare. El mantenimiento preventivo de cada máquina es vital y necesario para la producción diaria del periódico, y además evita que las piezas se deterioren.

16. Las máquinas instaladas son "refurbished" o máquinas restauradas las cuales están en mejores condiciones que las anteriores.

17. Entre las piezas y partes internas que compone cada máquina hay cuatro (4) cilindros grandes, cilindros de tinta, cilindros de transferencia de tinta, cilindros de transferencia de agua, eje de transmisión, rodillos de goma (alrededor de 14 por unidad), caja de bolas, engranajes, cajas de engranaje, mantillas (dos por unidad, total 36), placas, eje de transmisión, los "brackets", dos tinteros (donde va la tinta), bombas de aceite, entre otras piezas.

18. En cuanto a las partes externas de las máquinas están los dos folders, las correas, los tensores de las correas, el "butler" que es la pieza donde se monta el papel, entre otras. En cuanto al folder, ésta es la pieza que se encarga de compaginar el periódico, es la que dobla el papel y lo corta. El periódico completo sale del folder. Hay un (1) folder por cada nueve (9) máquinas. Si el folder se daña, esto implica una rotura mayor y deja inoperante las nueve (9) máquinas.

19. Las funciones esenciales del puesto del demandante contribuyen a que la producción del periódico corra sin problemas. El inspeccionar todas las partes y piezas de las máquinas diariamente, ya que, si las piezas están sueltas, la producción no sale por diversos problemas. El demandante explicó que, por ejemplo, si el rodillo está suelto, el papel sale sucio y la impresión no sale limpia. La inspección de los niveles de aceite diariamente es importante porque sin aceite se tranca la máquina. Ambos folders y los engranajes hay que lubricarlos todos los días ya que, de otra forma, se rompe la máquina. En el área de los compresores, los

fitros hay que drenarlos para botar la humedad (agua), y las bombas de tinta hay que inspeccionarlas para evitar tiqueo de tinta o rotura. También el demandante diariamente tenía que calibrar y ajustar los rodillos, reemplazar la media, y ajustar las correas pues si están sueltas, la banda de papel no está ajustada y se rompe el papel. Asimismo, las mantillas tienen que cambiarse diariamente al igual que los catorce (14) rodillos de goma por unidad.

20. El demandante continuó haciendo las mismas funciones cuando cambiaron las máquinas. Esto fue declarado por el demandante y por su supervisor el Sr. Eligio Dekony.

21. Luego de haber instalado las unidades restauradas en julio de 2016, el demandante estuvo trabajando hasta enero del año 2018, en el mismo turno de 8 horas al día y 5 días a la semana. El horario que siempre había trabajado. El supervisor inmediato del demandante nunca le mencionó a este que no tenía funciones suficientes que realizar, ni le dijo que sus funciones se habían reducido luego de la instalación de las máquinas reconstruidas.

22. La Sra. Ruth Román tiene 25 años de experiencia en Recursos Humanos. Para la fecha de 2 de diciembre de 2013 era la Directora de Recursos Humanos de Publi Inversiones y se reportaba al Sr. Salvador Hasbún.

23. La Sra. Román identificó las funciones esenciales de la posición del mecánico de prensa según surge de la Descripción de Deberes de los años 2014, 2015 y 2017. La descripción de deberes es el documento bien que le notifica al empleado y a su supervisor las funciones específicas que tiene que hacer.
Román admitió que las funciones del demandante nunca cambiaron.

24. Las descripciones de puesto las prepara el Departamento de Recursos Humanos. La Sra. Román admitió que el supervisor del demandante nunca le dijo que le eliminara alguna función porque el demandante no la estaba realizando. La Sra. Román evaluó las funciones esenciales de la posición del mecánico de prensa según surge de la Descripción de Deberes de los años 2014, 2015 y 2017. Declaró que no se le hizo cambios al documento que identifica las funciones del demandante porque éste continuaba haciendo las funciones luego de la restauración de las máquinas.

25. La Sra. Román discutió las evaluaciones del desempeño anual del demandante firmadas por el supervisor Eligio Dekony en los años 2016 y 2017, posterior a la instalación de las máquinas restauradas. Explicó que las evaluaciones son discutidas por el supervisor y el empleado y que luego pasan a Recursos Humanos. Declaró que, con las evaluaciones, se utilizan las hojas de descripción de deberes y se evalúan las funciones esenciales del puesto.

26. En la evaluación de desempeño de noviembre del año 2016, Román indicó que Dekony le otorgó al demandante la puntuación más alta en el criterio #1 que tiene que ver con el conocimiento del trabajo. Según Dekony marcó en la evaluación, el desempeño del demandante fue sobresaliente, que resulta en logros extraordinarios con contribuciones significativas a los objetivos del departamento. La Sra. Román declaró que este señalamiento de Dekony significa que el trabajo que está realizando el demandante es incuestionable. Más aún, al final de dicho criterio, Dekony escribió que el demandante era excelente mecánico industrial. En la misma evaluación, el criterio #2 consiste en la cantidad y calidad del trabajo, que, de acuerdo con Román, este criterio está relacionado con el volumen de trabajo y las funciones diarias del demandante como mecánico de prensa, su productividad diaria y rendimiento. Román reconoció que Dekony le otorgó al demandante cuatro (4) puntos, lo que significa que el demandante consistentemente genera resultados por encima de lo esperado de su puesto, y que contribuye de forma superior en sus funciones.

27. La evaluación de 31 de octubre de 2017 fue a dos meses y 17 días antes del despido. La Sra. Román declaró que en la última página el demandante obtuvo una puntuación final de 3.15. Según afirmó Román, esta puntuación significa que el demandante cumplió con las expectativas de su puesto y que las funciones inherentes al puesto de mecánico de prensa se estaban cumpliendo.

28. Por otro lado, la Sra. Román afirmó que el supervisor Sr. Dekony nunca le informó que el demandante se había quedado sin tareas que realizar luego de la restauración de las máquinas. También declaró que al demandante nunca le ofrecieron trabajo a tiempo parcial y que tampoco ofrecieron eliminarle días de trabajo. El demandante trabajaba las 8 horas al día, los 5 días de la semana de domingo a jueves y que Dekony nunca le sugirió que se le ofreciera al demandante trabajar a tiempo parcial.

29. En cuanto al despido, la Sra. Román sostuvo que ella no toma la decisión de despedir al demandante, ni participó en la decisión. El Sr. Salvador Hasbún la llamó 2 días antes del despido y le dijo que iba a eliminar la posición del demandante y despedirlo. Admitió que nunca fue consultada sobre el despido y que el Sr. Hasbún nunca le envió comunicación alguna explicándole las razones para el mismo.

30. La Sra. Ruth Román Hernández preparó y redactó el Manual de Empleados del año 2018. Conforme al Manual de Empleados de Publi Inversiones, en la página 27 se dispone lo siguiente:

o. Terminación de Empleo

…

Ningún empleado será separado de empleo involuntariamente sin que su Supervisor haya consultado la decisión con Recursos Humanos. Esto incluye los casos en que no se aprueba el periodo probatorio de empleo.

31. La Sra. Román admitió que nunca ha visto un plan de restructuración o de reorganización en Publi Inversiones.

32. El Sr. Alberto Montalvo comenzó a trabajar en Publi Inversiones en diciembre de 2013. Tenía a la fecha de los hechos 46 años, trece años menos que el demandante. En el año 2015 fue nombrado al puesto de prensista. Labora en el turno de la noche para la producción del periódico El Vocero.

33. El Sr. Montalvo conoce de mecánica de prensa. Fue ascendido a supervisor del Departamento de Producción. El Sr. Dekony, quien ocupaba ese puesto, fue ascendido a Vicepresidente de Producción. Esto ocurrió luego del despido del demandante. Estuvo haciendo funciones de prensista, y funciones de mecánico de prensa para el mantenimiento de la misma cuando despidieron al demandante.

34. El Sr. Rivera Camacho no fue sustituido por persona alguna en el puesto de mecánica de prensa posterior a su despido. El Sr. Alberto Montalvo, quien fue ascendido a supervisor en el Departamento de Producción y otros prensistas realizaron labores de mantenimiento de las prensas.

35. El Sr. Montalvo afirmó que, en efecto, las máquinas de la prensa que fueron restauradas requieren mantenimiento preventivo, pues éstas no se inspeccionan solas, no se lubrican solas, ni se calibran ni se ajustan solas. Declaró que la inspección envuelve el verificar en las 18 máquinas. Además, añadió que estas máquinas no eran nuevas, son restauradas.

36. Las máquinas restauradas tenían una garantía de seis meses con el restaurador la cual establecía:

WARRANTY: "... Seller shall not be liable for any parts replaced, repairs, modifications or changes made by others, or improper operation, or inadequate maintenance..."

37. El 7 de marzo de 2022 declaramos testigo no disponible al Ing. Jean P. Bayardelle, testigo de la parte demandante, conforme a la Regla 806(A)(4) de las Reglas de Evidencia. Se permitió la presentación de su testimonio conforme a una deposición tomada anteriormente. El Sr. Bayardelle declaró en la deposición que las máquinas de la prensa, viejas o nuevas siempre van a requerir mantenimiento. El mantenimiento y la reparación de la prensa es uno progresivo, pues no se espera a que las máquinas se deterioren. El mecánico de prensa repara y ajusta, el

propósito del mantenimiento preventivo es evitar el desgaste y desgarre de las piezas.

38. El Sr. Eligio Dekony Torres fue el supervisor inmediato de la parte demandante. El Sr. Dekony admitio que, tras la instalación de las máquinas, el demandante continuó trabajando las 8 horas al día, 5 días a la semana. Admitió además que, hasta la fecha del despedido, el demandante se mantuvo realizando las funciones esenciales de su puesto como mecánico de prensa. En cuanto al despido del demandante, declaró que no existe documento alguno sobre el despido del demandante, lo que recibió fue una llamada del Sr. Salvador Hasbún. Además, reconoció que no existe documento alguno que evidencie una restructuración o reorganización en Publi Inversiones. El Sr. Dekony declaró que recibió una llamada por el Sr. Salvador Hasbún para acortar gastos. El único puesto que fue eliminado fue el de mecánico de prensa.

39. No le dijeron las razones al demandante para su despido.

40. La demandada tuvo que contratar en al menos 6 ocasiones a un mecánico de prensa de Estados Unidos para unas reparaciones mayores en las máquinas.

41. El Sr. Salvador Hasbún Martínez es el Presidente de Publi Inversiones. Entre las distintas funciones que realiza como Presidente, visitaba el área de la prensa. El Sr. Hasbún conoce al demandante, éste realizaba trabajos de mecánico de prensa por el día. De noche, de surgir alguna situación los prensistas atendían lo que ocurriera, así sea cambiar la mantilla, por ejemplo.

42. El Sr. Salvador Hasbún todos los años solicita a los distintos departamentos evaluar la reducción de costos.

43. El empleado Ariel Hernández tiene funciones de guardia de seguridad. No se volvió a reclutar un mecánico prensa. La misma estructura continúa en el Departamento de Producción.

44. El Sr. Hasbún admitió que no hubo plan de reorganización o reestructuración.

Luego de tomar en consideración las determinaciones de hechos antes expresadas, la prueba documental y testimonial ofrecida por las partes en el juicio en su fondo y el derecho aplicable, el TPI resolvió lo siguiente:

En el caso de autos la parte demandante sí pudo probar un caso de discrimen por edad prima facie, el demandante fue despedido, está en un grupo protegido (mayor de 40 años) y cualificado para ejercer el puesto que ocupaba. Incluso la prueba demostró que estuvo ejerciendo sus funciones a cabalidad hasta el día del despido. Sin embargo, la prueba de la parte demandada

demostró que el puesto de mecánico de prensa fue eliminado, les confirieron labores a otros empleados a ser realizadas y contrataron a un mecánico externo al menos en seis ocasiones para reparaciones mayores. No hubo una sustitución al puesto de mecánico de prensa por una persona más joven. Quienes realizaron funciones de mantenimiento fue el Sr. Montalvo en su puesto de Director de Producción y el contratista de Estados Unidos para las reparaciones mayores. En ocasiones, conforme lo declarado por los testigos de la demandada los prensistas en el turno de noche le darían el mantenimiento que fuera requerido a las máquinas. Por lo tanto, en cuanto al despido no encontramos que este fuera discriminatorio por razón de edad. Sin embargo, no tenemos duda que el despido de la parte demandante fue injustificado.

El demandante laboró por 36 años en las compañías CINC y Publi Inversiones. Este último fue el patrono sucesor al adquirir el negocio en marcha. El Sr. Rivera Camacho continuó ejerciendo sus funciones con el patrono Publi Inversiones, sin interrupciones de servicio y con evaluaciones donde se le destacaba su labor. En lo relacionado a la adquisición de las máquinas restauradas y que ésta fuera la causa para despedir al demandante, ya que, alegan no sería necesario su puesto, no nos convence. El demandante estuvo realizando sus labores aproximadamente dos años luego de la adquisición de las máquinas restauradas, las cuales eran las mismas, pero de un modelo más avanzado. La documentación presentada sobre garantía, el testimonio relacionado a la maquinaria reflejó que eran necesarias todas las funciones que ejercía y continuó ejerciendo hasta su despido para que no se viera interrumpida la producción del periódico El Vocero. Conforme la descripción de deberes del puesto, las tareas del mecánico de prensa no están sujetas a la compra de nueva maquinaria o restauración de prensas. En ningún momento se alteraron las funciones del demandante, se redujeron sus tareas, o existe evidencia alguna del alegado plan de restructuración, reorganización o reducción de costos. Todas estas aseveraciones, fueron de manera verbal, en llamadas telefónicas y sin evidencia documental alguna. Tampoco se le brindó por escrito una carta de despido a un empleado que estuvo laborando 36 años en un puesto. Ni las razones para su despido.

En cuanto al cálculo de la mesada establecida por la Ley Núm. 80 del 30 de mayo de 1976, se debe de utilizar el ingreso más alto que recibió por el demandante en los últimos tres años antes de su despido. El salario más alto del demandante era de $39,858.27 anual, por lo que la indemnización por despido injustificado asciende a una cantidad de $102,729.

En vista de lo antes expuesto, el TPI declaró Ha Lugar la

*Demanda* que presentó el señor Rivera en cuanto al despido

injustificado. Así pues, condenó a Publi-Inversiones al pago de mesada por la cantidad de $102,729.00 y al 15% por concepto de honorarios de abogado. Por último, desestimó la causa de acción de discrimen por edad por el señor Rivera no haber probado las alegaciones en cuanto a este asunto.

El 10 de mayo de 2024, el señor Rivera presentó un *Memorando Juramentado sobre Honorarios de Abogado.*[14] En este, la representación legal de este último argumentó que la imposición del 15% por concepto de honorarios de abogado que se estableció en la *Sentencia* era extremadamente bajo. Reconoció que el 15% concedido se basó en el estándar que establece la Ley Núm.80-1976, *supra,* para la compensación de honorarios de abogado. Sin embargo, señaló que el Tribunal Supremo había establecido que se podía otorgar un porcentaje mayor al 15% siempre y cuando la representación legal del empleado presentara un memorando juramentado en el que acreditara la naturaleza y extensión de su trabajo ante el TPI. Así pues, afirmó que el trabajo y esfuerzo que realizó durante años en la presente controversia ameritaba y justificaba un aumento de porcentaje a 25%. Para sustentar los esfuerzos realizados, desglosó en detalle todos los trabajos realizados durante el proceso del caso y anejó un Juramento a tales efectos.

El 16 de mayo de 2024, el señor Rivera presentó una solicitud de reconsideración en cuanto a la determinación del TPI relacionada a la desestimación de la causa de acción de discrimen por edad.[15] Por su parte, ese mismo día, a saber, el 16 de mayo de 2024, Publi-Inversiones presentó una solicitud de reconsideración y determinaciones de hechos adicionales.[16] En esta, en lo pertinente,

---

[14] Véase, págs. 101-105 del apéndice del recurso KLAN202400686.
[15] Íd., págs. 90-94.
[16] Véase, Entrada 219, SUMAC.

le solicitó al TPI a que reconsiderara su determinación en cuanto a que el despido fue injustificado. Cabe precisar, que las partes presentaron sus respectivas oposiciones a estos escritos de reconsideración.

En respuesta a la solicitud del aumento de honorarios de abogado por parte del señor Rivera, el 30 de mayo de 2024, Publi-Inversiones presentó una *Oposición a Memorando Juramentado sobre Honorarios de Abogado.*[17] En esta, argumentó que la representación legal del señor Rivera no cumplió con los requisitos jurisprudenciales que justificaran el aumento en los honorarios de abogado. Puntualizó que el Tribunal Supremo había establecido que para que procediera una cuantía mayor en honorarios de abogado se debía presentar un memorando juramentado mediante el cual se detallara tanto las horas trabajadas como la tarifa a cobrar. Sostuvo que la representación legal del señor Rivera no cumplió con ello. Además, indicó que el caso no era uno complejo y que se complicó innecesariamente por la insistencia temeraria del señor Rivera relacionadas a sus alegaciones por discrimen por edad. Por estas razones, argumentó que no procedía el aumento en el porcentaje de los honorarios de abogado solicitado.

Evaluadas las solicitudes de reconsideración, el 17 de junio de 2024, el TPI emitió dos Resoluciones que se notificaron el 18 de junio de 2024 mediante las cuales denegó ambas solicitudes de reconsideración.[18]

En cuanto al memorando solicitando el aumento de honorarios de abogado, el 17 de junio de 2024, el TPI emitió una *Orden* que se notificó el 18 de junio de 2024 en la cual le concedió un término a la representación del señor Rivera para que presentara el detalle de horas trabajadas, la tarifa que cobraría por hora y el

---

[17] Véase, págs. 106-111 del apéndice del recurso KLAN202400686.
[18] Véase, Entrada 232 y 233, SUMAC.

tiempo invertido en las tareas realizadas conforme lo establecía el caso *Ortiz Valle v. Panaderia Ricomini*, 210 DPR 831 (2022).[19] Así las cosas, el 27 de junio de 2024, el señor Rivera presentó una *Moción en Cumplimiento de Orden* [...].[20] En esta, la representación legal del señor Rivera detalló nuevamente los trabajos realizados e indicó que la tarifa por hora que cobraba era de $200.00. Además, para sustentar lo alegado, anejó un memorando detallado de la descripción de sus tareas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. En vista de ello, le solicitó al TPI a que le concediera un total de $159,500.00 por concepto de honorarios de abogado.

Evaluados los escritos de las partes en cuanto a los honorarios de abogado, el 28 de junio de 2024, el TPI emitió y notificó una *Resolución* mediante la cual resolvió lo siguiente: "Conforme lo resuelto en *Ortiz v. Panadería Ricomini*, 2022 TSPR 131 (2022) y el desglose de las tareas realizadas por la abogada se reconsidera la partida de los honorarios para aumentar la misma a una 25%."[21]

Aún inconforme con la determinación del TPI de que el despido fue injustificado y con la determinación en cuanto al aumento de los honorarios de abogado de un 15% a un 25%, el 17 de julio de 2024, Publi-Inversiones presentó una *Apelación* en el caso núm. KLAN202400677 y formuló los siguientes señalamientos de error:

> **El Tribunal de Primera Instancia erró al determinar que el despido del Sr. Rivera fue injustificado.**
>
> **El Tribunal de Primera Instancia erró al determinar que Publi-Inversiones no presentó evidencia sobre un "plan" de restructuración, reorganización o reducción de costos a pesar de que, en su opinión en *Segarra Rivera v. Intl. Shipping et al.*, 208 DPR 964 (2022), el Tribunal Supremo estableció que, en el**

---

[19] Véase, Entrada 234, SUMAC.
[20] Véase, Entrada 235, SUMAC.
[21] Véase, Entrada 236, SUMAC.

**contexto de una reorganización, no es necesario presentar un plan de reorganización, sino que basta con articular y presentar una decisión gerencial válida.**

**El Tribunal de Primera Instancia erró al sustituir el criterio gerencial de Publi-Inversiones por el suyo al momento de determinar la necesidad de eliminar el puesto de mecánico de prensa que ocupaba el Sr. Rivera.**

**El Tribunal de Primera Instancia erró al aumentar la cuantía otorgada por concepto de honorarios de abogado de un 15% a un 25%.**

Atendido el recurso y evaluada la solicitud del señor Rivera para presentar una trascripción de la prueba oral, el 31 de julio de 2024, emitimos una *Resolución* concediéndole a las partes un término para presentar la transcripción de la prueba oral estipulada y un término al señor Rivera para presentar su alegato en oposición. Oportunamente, el señor Rivera presentó su *Oposición a Recurso de Apelación* y negó que el TPI cometiera los errores que Publi-Inversiones le imputó. Además, sometieron la transcripción de la prueba oral estipulada.

## II. KLAN202400686

Adoptamos por referencia los hechos procesales antes expuestos, ya que ambos recursos provienen del mismo caso. Como mencionamos anteriormente, el TPI dictó y notificó una *Sentencia* el 1 de mayo de 2024 en la cual, en lo pertinente, resolvió que el despido del señor Rivera había sido injustificado. Sin embargo, desestimó la causa de acción de discrimen por edad por entender que no se habían probado las alegaciones relacionadas a dicho asunto. Inconforme con este dictamen, el señor Rivera presentó una solicitud de reconsideración por estar en desacuerdo con la determinación en cuanto al discrimen por edad. Esta solicitud fue denegada por el TPI mediante una *Resolución* que se dictó el 17 de junio de 2024 y se notificó el 18 de junio de 2024.

Por otra parte, reiteramos que el 10 de mayo de 2024, la representación legal del señor Rivera presentó un *Memorando Juramentado sobre Honorarios de Abogado* mediante el cual, en síntesis, solicitó que se aumentara el porcentaje de 15% por concepto de honorarios de abogado a un 25%. Posteriormente, Publi-Inversiones presentó una oposición a esta solicitud y argumentó que la parte no había cumplido con los requisitos jurisprudenciales del caso *Ortiz Valle v. Panaderia Ricomini*, supra, para que se le considerara un aumento en la cantidad otorgada por concepto de honorarios de abogado. Particularmente, sostuvo que, en dicho caso, el Tribunal Supremo estableció que para que procediera una cuantía mayor en honorarios de abogado se debía presentar un memorando juramentado mediante el cual se detallara tanto las horas trabajadas como la tarifa a cobrar.

En vista de lo expresado por Publi-Inversiones, el 17 de junio de 2024, el TPI emitió una *Orden* que se notificó el 18 de junio de 2024 en la cual le concedió un término a la representación del señor Rivera para que presentara el detalle de horas trabajadas, la tarifa que cobraría por hora y el tiempo invertido en las tareas realizadas conforme lo establecía el caso *Ortiz Valle v. Panaderia Ricomini*, supra.[22] Así las cosas, el 27 de junio de 2024, el señor Rivera presentó una *Moción en Cumplimiento de Orden* [...].[23] En esta, la representación legal del señor Rivera detalló nuevamente los trabajos realizados e indicó que la tarifa por hora que cobraba era de $200.00. Además, para sustentar lo alegado, anejó un memorando detallado de la descripción de sus tareas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. En vista de ello, le solicitó al TPI a que le concediera un total de $159,500.00 por concepto de honorarios de abogado.

---

[22] Véase, Entrada 234, SUMAC.
[23] Véase, Entrada 235, SUMAC.

Evaluado el precitado escrito, el 28 de junio de 2024, el TPI emitió y notificó una *Resolución* mediante la cual resolvió lo siguiente en cuanto a los honorarios de abogados correspondientes: "Conforme lo resuelto en *Ortiz v. Panadería Ricomini,* 2022 TSPR 131 (2022) y el desglose de las tareas realizadas por la abogada se reconsidera la partida de los honorarios para aumentar la misma a una 25%."

En desacuerdo con que el TPI no le concediera una cantidad de $159,500.00 por concepto de honorarios de abogado y que el TPI desestimara la causa de acción por discrimen por edad, el 18 de julio de 2024, el señor Rivera presentó una *Apelación* en el caso núm. KLAN202400686 y formuló los siguientes señalamientos de error:

> **Erró el Honorable TPI al desestimar la reclamación de discrimen por razón de edad ya que Publi Inversiones no logró rebatir la presunción de discrimen y cuando el propio Presidente desmintió y negó la defensa de reorganización en el Departamento de Producción.**

> **Erró el TPI al no conceder el pago de honorarios de abogado a base de las tareas realizadas y horas trabajadas a tenor con el caso de *Ortiz v. Panadería Ricomini,* 2022 TSPR 131 (2022).**

Atendido el recurso y luego de varias prórrogas solicitadas, el 9 de septiembre de 2024, emitimos una *Resolución* concediéndole a Publi-Inversiones hasta el 13 de septiembre de 2024 para presentar su alegato en oposición a este recurso. Oportunamente, Publi-Inversiones presentó su *Escrito en Cumplimiento de Resolución y Oposición a Apelación* y en este negó que el TPI cometiera los errores que el señor Rivera le imputó.

**III. KLCE202400934**

Adoptamos por referencia los hechos procesales antes expuestos, ya que los recursos provienen del mismo caso. Sin embargo, cabe precisar que, el 9 de mayo de 2024, el señor Rivera presentó un *Memorando de Costas al Amparo de la Regla 44.1 de*

*Procedimiento Civil.*[24] Planteó que en la Demanda presentada se reclamó el pago de costas incurridas en el pleito. Expuso que en presente pleito se les tomaron deposiciones a tres testigos y que estas se consideraban como costas recobrables al amparo de la Regla 44.1 de Procedimiento Civil, *supra.* Así pues, desglosó los gastos y desembolsos incurrido en la tramitación de las deposiciones y concluyó que el total eran $2,692.95 por lo que solicitó el pago de dicha cantidad por concepto de costas. Además, anejó un juramento a tales efectos. El TPI le concedió un término a Publi-Inversiones para que se expresara, sin embargo, no lo hizo en el tiempo concedido por lo que el TPI emitió una *Resolución* el 19 de julio de 2024 que se notificó el 22 de julio de 2024 ordenando el pago de las costas.[25]

Posteriormente, el 23 de julio de 2024, Publi-Inversiones presentó una *Solicitud que se deje sin efecto Resolución por Falta de Jurisdicción.*[26] En esta, argumentó que el TPI no tenía jurisdicción para conceder costas ya que la Regla 52.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.3 establecía que con la mera presentación de un escrito de apelación se suspendían automáticamente ante el TPI todos los procedimientos que estuviesen relacionados con la sentencia o aquella parte de la cual se apela. Sostuvo que la apelación que presentó en cuanto determinación del TPI sobre que el despido fue injustificado estaba íntimamente relacionado al pago de costas ya que si este foro determinaba que el despido fue justificado no procedían las costas. Por estos motivos, solicitó que se dejara sin efecto la resolución dictada.

En respuesta, el señor Rivera presentó una *Oposición a Solicitud para que se deje sin efecto Orden de Pago de Costas.*[27]

---

[24] Véase, págs. 39-41 del apéndice del recurso KLCE202400934.
[25] Íd., pág. 51.
[26] Íd., págs. 53-55.
[27] Íd., págs. 57-59.

Argumentó que los señalamientos de error que presentó Publi-Inversiones en su Apelación, no tenían ninguna relación o pertinencia con las costas solicitadas. En virtud de ello, puntualizó que la Regla 52.3 (a) de Procedimiento Civil, *supra*, disponía que una vez se presentara una apelación, el TPI podía continuar con el pleito en cuanto a cualquier cuestión involucrada en el mismo no comprendida en la apelación. De este modo, concluyó que procedía el pago por la cantidad de $2,692.95 por concepto de costas.

Evaluados los escritos de las partes, el 15 de agosto de 2024, el TPI dictó una *Orden* que se notificó el 19 de agosto de 2024, en la cual le ordenó a Publi-Inversiones a que procediera con el pago de las costas en el término de diez (10) días. Inconforme con este dictamen, el 29 de agosto de 2024, Publi-Inversiones presentó un *certiorari* en el caso núm. KLCE202400934 y formuló el siguiente señalamiento de error:

> **El Tribunal de Primera Instancia abusó de su discreción al ordenar el pago de costas cuando ambas partes presentaron sus respectivas apelaciones donde cuestionaron la sentencia.**

Cabe mencionar que, junto a su recurso de *certiorari*, Publi-Inversiones presentó una solicitud de auxilio de jurisdicción mediante la cual solicitó que se paralizara la *Orden* de pago de costas hasta tanto atendiéramos las apelaciones presentadas por ambas partes. Atendida esta solicitud, el 29 de agosto de 2029, emitimos una *Resolución* ordenando la paralización de los procedimientos ente el TPI. Además, le concedimos al señor Rivera diez (10) días para presentar su postura en cuanto al recurso. Vencido el término para ello sin que el señor Rivera presentara su oposición al *certiorari*, damos por perfeccionado el recurso y procedemos a resolver el asunto ante nos.

II.

**KLAN202400677 y KLAN202400686**

-A-

La Ley Núm. 80, *supra,* fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo.[28] A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase: Exposición de Motivos de la Ley Núm. 80-1976, *supra.*; SLG *Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 424 (2013). Ello ya que, en la relación obrero-patronal, los trabajadores son la parte más débil. *Orsini García v. Srio. de Hacienda,* 177 DPR 596, 618 (2009). Así, la referida disposición legal "garantiza a todo empleado que trabaje mediante remuneración de alguna clase y que sea contratado por tiempo indeterminado, una compensación por su patrono –además del sueldo devengado– en caso de ser despedido sin justa causa". *López Fantauzzi v. 100% Natural,* 181 DPR 92, 108 (2011).

Cabe precisar que, la Ley Núm. 80-1976, *supra,* no define el término justa causa. *Jusino et als. v. Walgreens,* 155 DPR 560, 572 (2001). Sin embargo, enumera una serie de circunstancias que justifican el despido de un empleado. Íd. Al respecto, el Art. 2 la legislación en cuestión estatuye, 29 LPRA sec. 185b, entre otras cosas, que se consideran justa causa para el despido:

> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o

---

[28] En el 2017, la Ley Núm. 80, *supra,* sufrió unos cambios sustanciales a raíz de la aprobación de la Ley Núm. 4-2017, 29 LPRA sec. 121 *et seq.*, mejor conocida como la *Ley de Transformación y Flexibilidad Laboral,* que entró en vigor el 26 de enero de 2017 (Ley Núm.4-2017). Sin embargo, dichas enmiendas no son aplicables al apelante toda vez que fue reclutado previo a la vigencia de la referida Ley Núm.4-2017.

negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

Ahora bien, en lo pertinente al asunto ante nos, el Art. 2(e) de la legislación en cuestión, *supra*, dispone, en lo pertinente, que se considera justa causa para el despido "los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público". Así pues, con la aprobación de la Ley Núm. 80-1976, *supra*, el legislador reconoció que podrían existir circunstancias en el funcionamiento y manejo de los negocios y/o de índole económica que ameritaban despedir a un empleado por justa causa. *Segarra Rivera v. Intl. Shipping et al.*, 208 DPR 964, 984 (2022).

De este modo, el Tribunal Supremo en el caso *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 426, estableció que, las empresas podían cesantear a sus empleados sin tener la obligación de indemnizarlos conforme a la Ley Núm. 80-1976, *supra*, cuando

la decisión del despido se diera como parte de una reorganización empresarial según lo dispone el Art. 2(e) de la Ley Núm. 80, *supra.* Sin embargo, puntualizó que para que un patrono pudiese justificar un despido por reorganización "debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad". Íd., págs. 427. Consonó a ello, la reorganización debe ser *bona fide.* Íd., pág. 426. Es decir, la reorganización no puede ser producto del mero capricho del patrono, sino producto de consideraciones relacionadas al manejo de la empresa. Íd.

Ahora bien, cabe mencionar que, en *Segarra Rivera v. Intl. Shipping et al.*, supra, págs. 1002-1003, el Tribunal Supremo aclaró que para mostrar justa causa para el despido bajo el Art.2(e) de la Ley Núm. 80-1976, *supra,* bastaba con que el patrono demostrara y acreditara que la acción respondió a una decisión gerencial válida y que no obedeció a un mero capricho o arbitrariedad. Así pues, puntualizó que la obligación que impone la Ley Núm. 80-1976, *supra,* para probar que en efecto el despido se llevó a cabo por un proceso de reestructuración, no estaba sujeta a que se acreditara la existencia de un proceso o plan de reestructuración de una forma particular o especifica. Íd.

Como parte de la reestructuración *bona fide*, el patrono puede modificar su manera de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias. Íd., pág. 985. Por ejemplo, eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad. Íd.

-B-

La Ley Núm. 100-1959, *supra,* prohíbe el discrimen en el empleo de un patrono contra un empleado por razón de su raza, edad, color, *sexo,* origen social o nacional, condición social, afiliación o ideas políticas y religión. *López Fantauzzi v. 100%*

*Natural,* supra, pág. 121. Este estatuto incorpora el lenguaje proveniente del Art. II Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico, el cual prohíbe el discrimen en las clasificaciones allí mencionadas. *Garib Bazain v. Hosp. Español Auxilio Mutuo de Puerto Rico,* 204 DPR 601, 615 (2020). No obstante, al momento de la aprobación de esta legislación se añadió una categoría protegida adicional, la edad. Íd. Así pues, la referida ley prohíbe y penaliza el discrimen en el empleo. *Segarra Rivera v. Intl. Shipping et al.,* supra, pág. 988. Ahora bien, a pesar de que el estatuto no define el término discrimen, nuestro más Alto Foro ha expresado que existe discrimen "cuando ocurre un *trato desigual injustificado*; es decir, cuando alguna persona sufre una desigualdad por prejuicio o por arbitrariedad, sin que exista un fundamento razonable para la falta de trato igual". *Meléndez v. Asoc. Hosp. Del Maestro,* 156 DPR 828, 845 (2002).

El Art. 3 de la Ley Núm. 100-1976, *supra,* establece que "[s]e presumirá que cualquiera de los actos mencionados en los Artículos precedentes fue cometido en violación de esta Ley, cuando el mismo haya sido realizado sin justa causa. Esta presunción será de carácter controvertible". Esto quiere decir que, para que proceda la activación de la presunción de discrimen al amparo del precitado artículo, es necesario que el empleado pruebe que fue despedido sin justa causa y que existe la modalidad del discrimen alegado. *Diaz v. Wyndham Hotel Corp.,* 155 DPR 364, 384 (2001). Particularmente, cuando el empleado alegue discrimen por edad, este tiene el deber de presentar prueba que establezca lo siguiente: (1) que pertenece a la clase protegida por la Ley Núm. 100-1979, *supra,* a saber, su edad; (2) que estaba cualificado para ejercer el puesto que ocupaba; (3) que fue despedido; (4) que fue sustituido por una persona más joven, esto es, algún hecho base que lo ubique dentro de la

modalidad bajo la cual reclama. *Segarra Rivera v. Intl. Shipping et al.*, supra, págs. 989-990.

Así pues, una vez el empleado pruebe un caso *prima facie* de discrimen por razón de edad, el patrono tendrá la obligación de rebatir la presunción activada de la siguiente manera, a saber, (1) derrotar la ausencia de justa causa y (2) derrotar el hecho de que el despido fue por motivos discriminatorios. Íd., pág. 990. Cabe precisar que, aun cuando el Tribunal determine que el despido fue sin justa causa, el patrono también puede presentar prueba que el despido no fue discriminatorio. Íd. Para rebatir la presunción de que el despido no fue justificado, "basta con que el patrono pruebe, incluso con evidencia circunstancial, que la razón para tal acto no fue discriminatoria." Íd. Si el patrono logra derrotar la presunción de discrimen del Art. 3 de la Ley Núm. 100-1976, *supra*, el empleado aun tendrá oportunidad para probar su caso, entiéndase demostrar que hubo discrimen, pero esta vez lo tendrá que hacer sin el beneficio de la presunción. S.L.G *Hernández Beltrán v. TOLIC.,* 151 DPR 754, 775 (2000).

Por último, es importante resaltar que, cuando un patrono despide a un empleado con justa causa, no puede ser responsable de discrimen al amparo de la Ley Núm. 100, *supra. Segarra Rivera v. Intl. Shipping et al.*, supra, pág. 989. Por otra parte, "si una vez se presente la totalidad de la prueba y queda demostrado que no hubo ánimo o intención discriminatoria en el despido, pero el demandado [...] no probó la justa causa, el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, exclusivamente, a los remedios establecidos en la Ley Núm. 80". Íd., pág. 990.

-C-

El Art. 11(b) de la Ley Núm. 80-1976, 29 LPRA sec. 185(k), establece la partida de honorarios de abogado a la que el empleado

tiene derecho si se determina que en efecto su despido fue injustificado. Particularmente dispone que se concederá una cantidad por concepto de honorarios de abogado que no será menor del 15% por ciento del total de la compensación o cien dólares ($100), la que fuere mayor. Sin embargo, el Tribunal Supremo aclaró que, a pesar de que el 15% es el porciento base por concepto de honorarios que la ley autoriza, el juzgador tenía discreción para conceder una suma mayor. *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 297 (2011).

En *López Vicil v. ITT Intermedia, Inc.,* 143 DPR 574, 583 (1997), el Tribunal Supremo pautó los criterios que deben ser ponderados en aquellos casos en los que el abogado estime que hizo un esfuerzo excepcional que amerite una cuantía mayor por honorarios de abogado. Particularmente, el Tribunal Supremo determinó lo siguiente:

> "[e]n aquellas situaciones en que el abogado estime que el esfuerzo realizado, el impacto o resultado excepcional del caso, o el haber enfrentado una defensa hostil justifican el recibir una cuantía mayor en concepto de honorarios, éste podrá solicitar al tribunal su visto bueno para cobrar una tarifa a base de las horas trabajadas. En dicho caso, el abogado vendrá obligado a presentar un memorando juramentado en el que detalle las horas trabajadas y la tarifa a cobrarse por hora. De esta forma el tribunal podrá evaluar su razonabilidad. Para tales efectos, el abogado tomará en consideración lo siguiente:
>
> a) horas trabajadas y labor realizada: deberá desglosar el tiempo invertido en el caso y especificar las tareas realizadas. Incluirá el trabajo realizado en revisiones y apelaciones, y en procedimientos administrativos, de ser ese el caso. Véase: *Parker v. Califano*, 561 F.2d 320 (1977) (D.C. cir.).
>
> b) tarifa que cobra por hora en este tipo de caso: el abogado deberá justificar su tarifa aludiendo a su experiencia, preparación, y a cuánto se cobra tradicionalmente en ese tipo de casos. Podrá someter declaraciones juradas de otros abogados en las cuales estos indiquen sus tarifas. Íd.

Ahora bien, cabe precisar que, la concesión de honorarios adicionales al 15% de la indemnización base concedida al empleado

se encuentra en la sana discreción del TPI luego de evaluar los criterios antes mencionados. *Ortiz Valle v. Ricomini*, supra, pág.840. Asimismo, para evaluar la razonabilidad de la solicitud el tribunal debe tomar en cuenta su propia pericia y experiencia y la novedad y dificultad de las controversias, que, de ordinario, requieren más esfuerzo y dedicación por parte de los abogados. Íd. Finalmente, el Tribunal Supremo explicó que, el TPI "tendrá discreción para aceptar o modificar la suma de honorarios reclamada en el memorando, pero siempre deberá consignar por escrito, sus razones para llegar a determinada suma, pues sólo de esa manera ese cálculo podrá ser revisable y se evitarán abusos de discreción. Íd.

### KLCE202400934

-A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u

órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, *supra*, el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos postsentencia [como la que tenemos ante nuestra consideración] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*". *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 339 (2012). En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

-B-

La Regla 52.3 de Procedimiento Civil, *supra*, dispone lo siguiente en cuanto a la suspensión de procedimientos ante el TPI cuando una parte presenta una apelación ante el Tribunal de Apelaciones:

(a) Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en los tribunales inferiores respecto a la sentencia o parte de ésta de la cual se apela, o las cuestiones comprendidas en ella, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación. El Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión involucrada en él no comprendida en la apelación. No se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia disponga la venta de bienes susceptibles de pérdida o deterioro, en cuyo caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes se vendan y su importe se deposite hasta tanto el tribunal de apelación dicte sentencia.

-C-

En nuestro ordenamiento jurídico, la concesión de costas en un pleito se rige por la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 44.1. A esos efectos, el inciso (a) de la citada regla expone que las costas serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia, excepto en aquellos casos en que la ley o dicho cuerpo de reglas dispongan lo contrario. Además, establece que un tribunal puede conceder los gastos necesariamente incurridos en la tramitación del pleito o procedimiento, según estos sean ordenados por ley o según el tribunal, en el ejercicio de su discreción, estime que una parte debe reembolsar a la otra. Íd.

Por su parte, el inciso (b) de la referida regla dispone que:

> La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante certificación del abogado o abogada y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de *certiorari*. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.

El propósito de esta regla es indemnizar a la parte victoriosa en un caso por los gastos necesarios y razonablemente incurridos

durante el litigio. *Comisionado v. Presidenta*, 166 DPR 513, 514 (2005). Además, históricamente se ha reconocido que dicha regla también persigue penalizar la litigación inmeritoria, temeraria o viciosa y la que se lleva a cabo con el propósito de retrasar la justicia. *Rosario Domínguez v. ELA*, 198 DPR 197, 212 (2017). El objetivo es que la imposición de las costas tenga un efecto disuasivo sobre esa litigación innecesaria y costosa. *Auto Servi, Inc. v. E.L.A.*, 142 D.P.R. 321 (1997).

En nuestra jurisdicción, la imposición de costas a la parte vencida es obligatoria. *Rosario Domínguez v. ELA*, supra, pág. 212. Es decir, se concede el resarcimiento a la parte victoriosa por los gastos incurridos en el litigio, aunque la parte perdidosa no haya actuado temerariamente. Por lo tanto, luego de que la parte triunfante presenta oportunamente el memorando de costas, el tribunal deberá determinar qué gastos fueron necesarios y razonables, y conceder las costas a dicha parte. *Comisionado v. Presidenta*, supra, pág. 519.

Es imperativo aclarar que no todos los gastos en los que se incurre durante el transcurso de un procedimiento judicial se considerarán costas recobrables. Íd., pág. 518. De acuerdo con el inciso (a) de la Regla 44.1, *supra*, las costas son gastos necesarios para tramitar un pleito o los que el tribunal, en el ejercicio de su discreción, estime que un litigante deba reembolsarle al otro. Cabe mencionar que los tribunales deben ejercer esta discreción con moderación. *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245, 246 (1963). Debido a que las costas que contempla esta regla son gastos necesarios y razonables, un tribunal no deberá aprobar gastos innecesarios, superfluos o extravagantes. Íd.

Por último, en ausencia de que se demuestre que el TPI cometió un abuso de discreción, un tribunal revisor no intervendrá con la discreción del foro original al reconocer como costas ciertas

partidas, gastos razonables y necesarios en el trámite del pleito. *Andino Nieves v. AAA.*, 123 DPR 712, 719 (1989).

III.

**I.KLAN202400677**

En su primer señalamiento de error, Publi-Inversiones indicó que el TPI erró al resolver que el despido del señor Rivera fue injustificado. Específicamente, en su segundo señalamiento de error, argumentó que el TPI erró al determinar que Publi-Inversiones no había presentado evidencia sobre un plan de reorganización que justificara el despido. Indicó que en el caso *Segarra Rivera v. Intl. Shipping et al.*, supra, el Tribunal Supremo estableció que cuando un patrono pretendía justificar un despido bajo el fundamento de una reorganización, no era necesario presentar un plan de reorganización, sino que bastaba con articular y presentar una decisión gerencial válida. De igual forma, en su tercer señalamiento de error, expresó que el TPI erró al sustituir el criterio gerencial de Publi-Inversiones por el suyo al determinar la necesidad de la eliminación del puesto del señor Rivera. Por último, en su cuarto señalamiento de error, impugnó la determinación del TPI de aumentar la cuantía otorgada por concepto de honorarios de abogado del un 15% a un 25%.

Discutiremos los primeros tres señalamientos de error en conjunto por estar íntimamente relacionados entre sí. Cabe señalar que, en el presente caso se celebró un juicio en su fondo que duro varios días. En este, testificó el señor Rivera, la señora Román, directora de Recursos Humanos de Publi-Inversiones, el señor Montalvo, prensista de Publi-Inversiones, el señor Dekony, vicepresidente del Departamento de Producción de Publi-Inversiones y el señor Hasbún, presidente de Publi-Inversiones. Sin embargo, la única transcripción de prueba oral estipulada por las partes que se presentó ante este foro fue el testimonio del señor

Montalvo. Esta prueba testifical la presentó el señor Rivera en apoyo a su argumento de que el despido fue por discrimen por edad.

Tomando en consideración lo antes expuesto, debemos recordar que las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realice el TPI merecen la mayor deferencia judicial, pues son estos los que tuvieron la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante el juicio en su fondo. Así pues, el Tribunal Supremo ha establecido que este foro intermedio está impedido de intervenir con la apreciación de la prueba oral en ausencia de una transcripción o exposición narrativa de una prueba oral.[29]

En el caso de autos, Publi-Inversiones argumentó que probó un cambio organizacional *bona fide* que justificó el despido del señor Rivera. Particularmente sostuvo que el despido del señor Rivera se debió a la adquisición de nuevas máquinas de prensa para mejorar la producción y del deseo del presidente de la compañía para recortar gastos. Sostuvo que estos cambios provocaron que se eliminara la posición de mecánico de prensa.

Recalcamos que únicamente tenemos ante nuestra consideración la transcripción de prueba oral del testimonio del señor Montalvo. De un estudio detenido de esta prueba oral, se desprende que lo único que el señor Montalvo testificó en cuanto a la controversia del presente recurso es que el señor Rivera continúo trabajando de mecánico de prensa un año y medio después de que se instalaran las maquinas restauradas.[30] Este último no testificó sobre los otros asuntos presentadas ante nos por Publi-Inversiones. En consecuencia, le daremos deferencia judicial a las

---

[29] Véase, *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 219 (2021); *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).
[30] Véase, pág. 22, líneas 24-25 y pág. 23, líneas 1-4 de la transcripción de la prueba oral estipulada.

determinaciones de hechos que realizó el TPI basadas en la apreciación de la prueba oral relacionada a los planteamientos de Publi-Inversiones en este recurso. Ello, ya que como establecimos anteriormente no podemos intervenir en la apreciación de la prueba oral en ausencia de la transcripción de prueba oral.

Dicho lo anterior, a continuación, resumiremos las determinaciones de hechos que realizó el TPI en cuanto al asunto ante nos. El 11 de abril de 2014, el señor Rivera comenzó a trabajar con Publi- Inversiones como empleado regular a tiempo completo. Las funciones del señor Rivera consistían en realizar reparaciones y mantenimientos a las maquinas de prensa. Este último era el único mecánico de prensa contratado por Publi-Inversiones. En julio del año 2016, Publi-Inversiones instaló dieciocho (18) máquinas restauradas en el área de prensa. A pesar de las instalaciones de estas máquinas, el señor Rivera continúo realizando las mismas funciones en el mismo turno de ocho (8) horas diarias, cinco (5) días a la semana hasta el 12 de enero de 2018, fecha en la que fue despedido.

Al señor Rivera nunca se le mencionó, posterior a las instalaciones de las máquinas, que este no tenía funciones suficientes para realizar ni que sus funciones habían cambiado. Además, en el año 2016 y 2017 el señor Rivera fue evaluado. De la evaluación que se le realizó en el año 2016, surge que el desempeño del señor Rivera fue sobresaliente lo que significaba que este consistentemente generaba resultados por encima de lo esperado en su puesto y que contribuía de forma superior en sus funciones. Asimismo, en el año 2017 el señor Rivera recibió una puntuación de 3.15 en su evaluación lo que significaba que este cumplió con las expectativas de su puesto. A pesar de lo antes mencionado, el señor Rivera fue despedido por el presdiente de Publi-Inversiones mediante una llamada telefónica. No se le proveyó ninguna

explicación para su despido y tampoco existe documento alguno relacionado a ello.

En cuanto al plan de reorganización, el supervisor inmediato del señor Rivera y el presidente de Publi-Inversiones admitieron que no existía documento alguno para evidenciar una restructuración o reorganización en Publi-Inversiones. El supervisor del señor Rivera se limitó a declarar que recibió una llamada del señor Hasbún para recortar gastos. Por último, cabe precisar que, el único puesto que fue eliminado fue el de mecánico de prensa.

Nótese que según las determinaciones de hechos antes expuestas, el señor Rivera fue despedido aproximadamente dos (2) años luego de que las dieciocho (18) maquinas restauradas fuesen instaladas. Además, reiteramos que en el periodo de esos dos (2) años, el señor Rivera continúo trabajando en su horario regular y nunca se le informó que debido a las instalaciones de las maquinas sus funciones habían reducido o cambiado de manera alguna. Entiéndase, el señor Rivera continuo con sus funciones de proveerle mantenimiento y reparación a las maquinas por ese periodo de dos (2) años. Asimismo, cabe precisar que, el señor Rivera recibió evaluaciones sobresalientes durante los años 2016 y 2017, previo a su despido en el 2018. A pesar de ello, el señor Rivera fue despedido a través de una llamada telefónica sin explicación alguna.

Si bien es cierto que en el caso *Segarra Rivera v. Intl. Shipping et al.*, supra, págs. 1002-1003, el Tribunal Supremo aclaró que, cuando un patrono pretendía justificar un despido bajo el fundamento de una reorganización, no era necesario presentar un plan de reorganización, sino que bastaba con articular y presentar una decisión gerencial válida, ello no ocurrió en el presente caso.

Tomando en consideración las determinaciones de hechos realizadas por el TPI a base de la prueba oral, no nos convence que el despido del señor Rivera fue producto de consideraciones

relacionadas al manejo de la empresa o por una decisión gerencial válida. El despido del señor Rivera no se llevó a cabo inmediatamente después de la instalación de las maquinas, sino que su despido se realizó dos (2) años después de dichas instalaciones y este continúo realizando sus funciones regulares por este periodo de tiempo. Por esta razón no estamos de acuerdo con el argumento de Publi-Inversiones de que las instalaciones de las máquinas provocaron la eliminación del puesto del señor Rivera.

Por otro lado, el recorte de gastos al cual alude el presidente de Publi-Inversiones no fue evidenciado y únicamente se eliminó el puesto de mecánica de prensa. Es decir, en ningún momento Publi-Inversiones acreditó la reducción en los gastos ni estableció un nexo causal entre las circunstancias económicas de la empresa y el despido del señor Rivera. A lo anterior añadimos que el señor Rivera se desempeñaba en su puesto de manera sobresaliente y nunca se le informó la razón de su despido. Dicho lo anterior, nos encontramos forzados a resolver que el despido del señor Rivera fue injustificado. Consecuentemente, los primeros tres señalamientos de error **no** se cometieron.

Ahora bien, en cuanto al cuarto señalamiento de error relacionado a los honorarios de abogado, le asiste la razón a a Publi-Inversiones. En el caso de autos, se dictó y notificó la *Sentencia* recurrida el 1 de mayo de 2024. Posteriormente, el 10 de mayo de 2024, la representación del señor Rivera presentó un *Memorando Juramentado sobre Honorarios de Abogado*. En este argumentó que el trabajo y esfuerzo que realizó durante años en la presente controversia ameritaba y justificaba un aumento de porcentaje de un 15% a un 25% por concepto de honorarios de abogado. Para sustentar dicho aumento expresó en detalle los trabajos realizados durante el proceso del caso.

En desacuerdo con esta solicitud, Publi-Inversiones presentó una oposición mediante la cual sostuvo que para que procediera una cuantía mayor en honorarios de abogado se debía presentar un memorando juramentado mediante el cual se detallara tanto las horas trabajadas como la tarifa a cobrar. Indicó que la representación legal del señor Rivera no cumplió con ello. Ante ello, el TPI dictó una *Orden* concediéndole un término a la representación del señor Rivera para que presentara el detalle de horas trabajadas, la tarifa que cobraría por hora y el tiempo invertido en las tareas realizadas conforme lo establecía el caso *Ortiz Valle v. Panaderia Ricomini*, supra.

En cumplimiento con esta orden, la representación legal del señor Rivera detalló nuevamente los trabajos realizados e indicó que la tarifa por hora que cobraba era de $200.00. Además, para sustentar lo alegado, anejó un memorando detallado de la descripción de sus tareas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. A base de lo antes expuesto, argumentó que procedía concederle una cantidad de $159,500.00 por concepto de honorarios de abogado. Evaluada esta solicitud, el TPI emitió y notificó una *Resolución* mediante la cual aumentó la partida de los honorarios a un 25%.

Conforme al derecho que antecede, el porciento base por concepto de honorarios de abogado que la Ley Núm. 80, *supra,* autoriza —si se determina que el empleado fue despedido injustificadamente— es de 15%. Sin embargo, el Tribunal Supremo estableció que el TPI tiene la discreción para conceder una **suma mayor adicional** a este 15% conforme los criterios que el Tribunal Supremo pautó en el caso *López Vicil v. ITT Intermedia, Inc.,* supra. *Hernández Maldonado v. Taco Maker*, supra, pág. 297. El referido caso establece que cuando el abogado estime que hizo un esfuerzo excepcional que amerite una cuantía mayor por honorarios de

abogado debe presentar un memorando juramentado en la que detalle las horas trabajadas y la tarifa a cobrarse por hora. Íd., pág. 583. A base de ello, el TPI podrá evaluar su razonabilidad y en su sana discreción podría conceder una suma adicional al 15%. Íd. Es importante mencionar que, si el TPI decide aceptar el aumento adicional, deberá consignar por escrito sus razones para llegar a determinada suma. *Ortiz Valle v. Ricomini*, supra, pág. 840. Únicamente de esta manera dicha cuantía podría ser revisable ante este foro intermedio. Íd.

En vista de lo anterior, concluimos que el TPI erró al aumentar el porcentaje por concepto de honorarios de abogado de un 15% a un 25%. Como mencionamos anteriormente, el porcentaje base que se puede otorgar por concepto de honorarios de abogado en caso de un despido injustificado es un 15%. Si el TPI determina otorgar una cuantía mayor a este 15%, esta se considerará como una cantidad adicional al 15% por lo que no procede aumentar el porcentaje base establecido por ley. Dicho esto, procede que el TPI examine detenidamente el memorando que presentó la representación legal del señor Rivera detallado de la descripción de sus tareas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. Luego deberá evaluar la razonabilidad de la cuantía adicional solicitada y determinar si procede otorgarla. Si el TPI determina otorgarla deberá consignar por escrito sus razones para llegar a determinada suma. En vista de lo antes expuesto, el cuarto señalamiento de error se cometió.

## II. KLAN202400686

De entrada, cabe mencionar que, en su segundo señalamiento de error, el señor Rivera argumentó que el TPI erró al no concederle el pago de honorarios de abogado a base de las tareas realizadas y horas trabajadas a tenor con el caso *Ortiz v. Panadería Ricomini*, supra. Este señalamiento de error fue discutido en el cuarto

señalamiento de error del recurso núm. KLAN202400677. En cuanto a ello determinamos que el TPI debía examinar el memorando que presentó la representación legal del señor Rivera y determinar si procede o no conceder la cuantía adicional solicitada a base de las tareas realizadas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. Enfatizamos que es de suma importancia que si el TPI, en su sana discreción, determina que procede la cuantía adicional al 15% por concepto de honorarios de abogado, debe fundamentar por escrito la procedencia de esta para que esta determinación sea revisable ante nos.

Dicho lo anterior, procede únicamente discutir el primer señalamiento de error. En este, el señor Rivera sostuvo que el TPI erró al desestimar la reclamación por discrimen por edad. Particularmente, argumentó que Publi-Inversiones no logró rebatir la presunción de discrimen. Puntualizó que el propio presidente de Publi-Inversiones desmintió y negó la defensa de reorganización en el Departamento de Producción. Cabe señalar que, el señor Rivera presentó la transcripción de la prueba oral estipulada del señor Montalvo en apoyo a su contención de que el despido fue por discrimen por edad.

Conforme al derecho que antecede, cuando el empleado alegue que su despido fue por discrimen por edad, este tiene que presentar prueba que establezca lo siguiente para para probar un caso *prima facie* por discrimen por edad: (1) que pertenece a la clase protegida por la Ley Núm. 100-1979, *supra* (mayor de 40 años); (2) que estaba cualificado para ejercer el puesto que ocupaba; (3) que fue despedido; y, por último (4) que fue sustituido por una persona más joven. *Segarra Rivera v. Intl. Shipping et al.*, supra, págs. 989-990. Ahora bien, luego de que el empleado pruebe un caso *prima facie* de discrimen por razón de edad, el patrono tendrá la obligación de rebatir la presunción activada de la siguiente manera, a saber,

(1) derrotar la ausencia de justa causa y (2) derrotar el hecho de que el despido fue por motivos discriminatorios. Íd., pág. 990.

En el presente caso, el señor Rivera evidenció que pertenecía a la clase protegida por la Ley Núm. 100-1979, *supra*, ya que, es un hecho incontrovertido que, en el momento de su despido, este tenía 59 años. De igual forma, quedó demostrado que este último estaba cualificado para ejercer su puesto. Ello se evidenció a través de las evaluaciones realizadas en los años 2016 y 2017 que reflejaban el excelente desempeño por parte del señor Rivera de sus funciones. Por otra parte, es un hecho incontrovertido que el señor Rivera fue cesanteado de su empleo el 12 enero de 2018. Sin embargo, el señor Rivera no logró probar que en efecto su puesto fue sustituido por una persona más joven.

A pesar de que resolvimos que el despido del señor Rivera fue injustificado, Publi-Inversiones sí logró probar que el despido del señor Rivera **no** fue por discrimen por edad. De las determinaciones de hechos que realizó el TPI surge que el señor Rivera no fue sustituido por persona alguna en el puesto de mecánica de prensa posterior a su despido. Las funciones de mantenimiento que realizaba el señor Rivera fueron realizadas por el señor Montalvo, quien fue ascendido a supervisor del Departamento de Producción, y otros prensistas. Específicamente, como parte de su testimonio, el señor Montalvo declaró lo siguiente:

> P: Okey. ¿Y posterior a su despido, a usted le empiezan a requerir ir los días libres para darle mantenimiento a esa prensa?
>
> R: Y venía yo, e inclusive otros compañeros.[31]
>
> […]
>
> R: Se engrasaba la prensa, lo hacíamos entre todos.
>
> P: Pero, ¿"entre todos" es entre todos, quién?

---

[31] Véase, pág. 23, líneas 16-19 de la transcripción de la prueba oral estipulada.

R: Los compañeros, nos dividíamos las tareas, porque son dos prensas.

P: ¿Son dos prensas de 18 unidades?

R: De 18 unidades, exacto, uno, dos o tres hacían un trabajo y otros hacían el otro.[32]

[...]

P: Okey. O sea, ¿que la prensa nueva también es un hecho incontrovertido que desde el 2016 usted está haciendo eso desde que se instalaron las nuevas?

R: Eso es correcto.

P: Bien. ¿Y sus compañeros igual?

R: Y los compañeros.[33]

Además, para las reparaciones mayores de las máquinas de prensa Publi-Inversiones contrató un mecánico de prensa de Estados Unidos en seis (6) ocasiones. En cuanto a ello, el señor Montalvo testificó lo siguiente:

P: Okey. Le voy a preguntar, don Alberto, usted mencionó también que, a preguntas de la compañera, que se llamaba, a un, un americano, usted dijo eso, ¿correcto?

R: Bueno, los que fueron ahí a trabajar.

P: ¿Perdón?

R: Los que fueron hacer las reparaciones.

P: Okey. Le pregunto si en el año 2019, el 2019, le puedo dar referencias, ya estaban las máquinas montadas, fue cuando le tomaron la deposición, en ese año, le pregunto si usted recuerda cuántas veces, si alguna, vino el americano a reparar la máquina.

R: Desde que montaron la prensa nueva, cuatro veces.

P: Okey. En el 2019.

R: No, en el 2019 acordarme ahora no, pero sí, vino el americano y recientemente, el año pasado en noviembre, vino otro.[34]

Como podemos observar, ninguna persona ocupó el puesto de mecánico de prensa luego de que el señor Rivera fue despedido por

---

[32] Véase, pág. 25, líneas 1-7 de la transcripción de la prueba oral estipulada.
[33] Véase, pág. 53, líneas 16-21 de la transcripción de la prueba oral estipulada.
[34] Véase, pág. 46, líneas 10-25 y pág. 47, línea 1 de la transcripción de la prueba oral estipulada.

lo que su puesto en efecto fue eliminado. Las reparaciones y mantenimientos menores las realizaban tanto el señor Montalvo como los otros prensistas. Por otro lado, las reparaciones mayores se llevaban a cabo por personas que contrataba Publi-Inversiones que venían de Estados Unidos. Por todo lo anterior, concurrimos con la determinación del TPI de que el despido no fue discriminatorio por razón de edad como lo alegó el señor Rivera. De este modo, el primer señalamiento de error no se cometió.

## III. KLCE202400934

En su único señalamiento de error, Publi-Inversiones argumentó que el TPI erró al ordenar el pago de costas cuando ambas partes presentaron sus respectivas apelaciones cuestionando la *Sentencia* que se emitió y notificó el 1 de mayo de 2024.

En el caso de autos, ocho (8) días después de que se dictó la *Sentencia* recurrida, el señor Rivera presentó un memorando de costas al amparo de la Regla 44.1 de Procedimiento Civil, *supra*. En este, desglosó los gastos y desembolsos incurridos en la tramitación de las deposiciones que se les tomaron a tres testigos y en vista de ello, reclamó la cantidad de $2,692.95 por concepto de costas. El TPI le concedió término a Publi-Inversiones para que se expresara, pero este último no lo hizo en el tiempo concedido por lo que el TPI dictó una *Resolución* ordenando el pago de costas.

Posteriormente, Publi-Inversiones presentó una solicitud para que se dejara sin efecto el pago de costas por falta de jurisdicción. Argumentó que las partes habían presentado sus respectivas apelaciones impugnando la *Sentencia* que se dictó y notificó el 1 de mayo de 2024 y, por ende, no se podía ordenar el pago de costas hasta tanto los foros apelativos atendieran los asuntos impugnados. Indicó que la presentación de las apelaciones paralizaba los procesos ante el TPI. Además, añadió que el pago de costas dependía

de la determinación que en su día tomaran los foros apelativos. Por estos motivos, solicitó que se dejara sin efecto la orden de pago de costas.

El señor Rivera se opuso a esta moción y, en síntesis, argumentó que la Regla 52.3 (a) de Procedimiento Civil, *supra*, disponía que una vez se presentara una apelación, el TPI podía continuar con el pleito en cuanto a cualquier cuestión involucrada en el mismo no comprendida en la apelación. A tales efectos, insistió que procedía el pago por la cantidad de $2,692.95 por concepto de costas. Evaluadas las posturas de ambas partes, el TPI dictó una *Orden* en la cual le ordenó a Publi-Inversiones a que procediera con el pago de las costas en el término de diez (10) días.

La Regla 44.1 de Procedimiento Civil, *supra*, establece que el TPI puede conceder los gastos necesariamente incurridos en la tramitación del pleito o procedimiento a la parte victoriosa en un caso, según estos sean ordenados por ley o según el tribunal, en el ejercicio de su discreción, estime que una parte debe reembolsar a la otra. Así pues, en ausencia de abuso de discreción, un tribunal revisor no intervendrá con la discreción del foro original al reconocer como costas ciertas partidas, gastos razonables y necesarios en el trámite del pleito. *Andino Nieves v. AAA.,* supra, pág. 719.

Dicho lo anterior, en el presente caso, consideramos que el TPI no abusó de su discreción al declarar Ha Lugar el memorando de costas que presentó el señor Rivera. Consideramos que los gastos incurridos en las deposiciones de los testigos son gastos recobrables por concepto de costas. Sin embargo, el TPI no puede ordenar el pago de estas costas hasta tanto los foros apelativos[35] emitan un dictamen y notifiquen el mandato. Consecuentemente, concurrimos

---

[35] Con foros apelativos nos referimos al Tribunal de Apelaciones y el Tribunal Supremo de Puerto Rico.

con Publi-Inversiones que el pago de las costas dependerá de las determinaciones que tomen los foros apelativos.

IV.

**KLAN202400677 y KLAN202400686**

Por los fundamentos antes expuestos, en cuanto a los recursos núm. KLAN202400677 y el KLAN202400686, ***confirmamos*** la *Sentencia* recurrida.

Por otro lado, ***revocamos*** la *Resolución* que el TPI dictó y notificó el 28 de junio de 2024 y le ordenamos al TPI a que proceda conforme a lo aquí resuelto sobre la evaluación del memorando de honorarios de abogado conforme lo dispone el caso *Ortiz v. Panadería Ricomini, supra.*

**KLCE202400934**

Por los fundamentos antes expuestos, expedimos el recurso de certiorari y ***modificamos*** el dictamen recurrido a los efectos de determinar que el pago de las costas no se puede ordenar hasta tanto los foros apelativos emitan un dictamen y notifiquen el mandato.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones